PROVOSTY,' J.
The accused was prosecuted before the Second recorder’s court for violation of the following ordinance:
An Ordinance Defining Rat-Proofing of All Buildings.
An ordinance to better protect the public health, and particularly to prevent the introduction and spread of bubonic plague, by providing for the rat-proofing of all buildings, outhouses and other superstructures, stables, lots, open areas and other premises, sidewalks, streets and alleys in the city of New Orleans.
Whereas, during the month of June, 1914, the bubonic plague made its appearance in the city of New Orleans, and thereby threatened the health and lives of the people through the ravages of the dread disease, and menaced the prosperity of the entire community through the imminence of destructive quarantines ; and,
Whereas, the city government and the state and city health authorities, in earnest effort to avert the calamities aforesaid, solicited and secured the co-operation and active assistance of the United States Public Health Service in dealing with the crisis impending; and,
Whereas, the board of health of the parish of Orleans and the city of New Orleans, with the concurrence and advice of the United States Health authorities, enacted certain ordinances designated to eradicate and prevent both rodent and human infection from the said bubonic plague, among which said ordinances were Ordinances Nos. 17 and 21 of the board of health series; and,
Whereas, the honorable Supreme Court of the state of Louisiana has, in the case of the city of New Orleans versus Miss M. Sanford et al., held that the said ordinances, although under the stringent circumstances of the case justified and necessary, yet solely because of a certain detail of discretionary executive authority vested thereby in the city health officer, and which authority it is admitted in the opinion of said court has not been by said officer improperly or oppressively exercised, they held, the said ordinances were unconstitutional, and hence null and void ; and,
Whereas, the work of the authorities under the health ordinances aforesaid has, up to the present time, entirely averted the disastrous menace of the plague, still the said work is by no means finished, nor is the menace of infection and the spread of the disease finally eliminated ; and,
Whereas, abandonment of the work under said ordinances or delay in the prosecution thereof is fraught with grave danger to the health of the people and the commercial prosperity of the community, the commission council of the city of New Orleans is not only constrained by the dictates of prudence, but feels in solemn duty bound to re-enact in the legal form prescribed by the honorable Supreme Court the said health ordinances which the said court has held are, in purpose, both justifiable and necessary. Now/ therefore:
Section 1. Be it ordained by the commission council of the city of New Orleans, that from and after the promulgation of this ordinance that every building, outhouse and other superstructure, stable, lot, open area and other premise, sidewalk, street and alley, now constructed, or hereafter to be constructed in the city of New Orleans, shall be rat-proofed in the manner hereinafter provided for.
Sec. 2. Be it further ordained, etc., that it shall be unlawful for any person, firm or corporation to have or maintain, or hereafter to construct any building, outhouse or other superstructure, stable, lot, open area or other premise, sidewalk, street or alley within the city of New Orleans, unless the same shall be rat-proofed in the manner hereinafter provided for.
Sec. 3. Be it further ordained, etc., that for the purpose of rat-proofing, all buildings, outhouses and other superstructures in the city of New Orleans, except stables, shall be divided into three classes, to wit: Class A, Class B and Class C; and the same shall’ be rat-proofed in the manner following, to wit:
Class A — All buildings, outhouses and other superstructures of class A shall have floors made of concrete, which concrete shall be not less than three (3) inches thick, and overlaid with a top dressing of cement, mosaic tiling, or other impermeable material, laid in cement mortal-, and such floor shall rest without any intervening space .between, upon the ground, or upon filling of clean earth, sand, cinders, broken stone or brick, gravel or similar material, which filling shall be free from animal or vegetable substances; said floor shall extend, and be hermetically sealed, to walls surrounding said floor, which walls shall’ be made of concrete, stone or brick, laid in cement mortar, and each wall to be not less than six (6) inches thick, and shall extend into and below the surface of the surrounding ground at least two (2) feet, and shall extend not less than one (1) foot above the surface of said floor; provided that wooden removable gratings may be laid on such concrete floors in such parts of such buildings,, superstructures and outhouses as are used exclusively as sales departments.
Class B — All buildings, outhouses and other superstructures of class B shall be set upon pillars or underpinning of concrete, stone or brick, laid in cement mortar, such pillars or underpinning to be not less than eighteen (18) inches high, the height to be measured from the ground level to the top of said pillars or underpinning ; and the intervening space between said building and the ground level to be open on three (3) sides, and to be free from all rubbish and other rat-harboring material, or may be made rat-proof by constructing at the margin of the ground area of said building a wall of *610 concrete or brick or stone laid in cement; such wall to extend into and below the surface of the ground at least two (2) feet and to meet the floor of the building above closely and without any intervening space, such walls shall be at least six (6) inches thick and extend entirely around said building; provided that said walls may be built with openings therein for ventilation only, and provided further, that such openings for ventilation may be of such size as the owner may elect and shall be securely screened with metallic gratings having openings between the bars of said gratings of not more than one-half inch, or with wire mesh of not less than twelve gauge, having openings between the wires of said mesh of not more than one-half inch, and the whole so constructed and closed as to prevent the entrance of rats beneath such building.
Class C — All buildings, outhouses and other superstructures of class C shall be rat-proofed as provided in class A except that tar-cinder composition flooring, as hereinafter defined and provided for, may be substituted for the concrete floors provided for in class A. That tar-cinder flooring hereinabove provided for, is hereby defined to be a composition of cinders and coal tar only, and, when laid, to be covered by a wooden floor.
The cinders used in the composition shall be free of soft ash and clinkers and shall be brought to the work dry.
The coal tar used in the composition shall be the product of the dry distillation of coal, and shall contain not more than two (2) per cent of water, and shall be free from any mixture with other substance or thing.
The composition of, and manner of laying, tar-cinder composition flooring shall be as follows :
To each cubic yard of such cinders shall be added twenty gallons of such coal tar, the whole to be thoroughly mixed on the work where the same is to be laid, and no other substance or thing to be added thereto. This composition shall be laid between the walls hereinabove provided for in rat-proofing buildings of class A, and cover the w’hole space to be floored, and the whole to be thoroughly tamped or rolled, as provided for hereinafter. The sleepers to be used in the laying of such flooring shall be creosoted by having the creosote pressed into each sleeper, under a pressure of not less than fifteen pounds to the square foot, and such sleepers shall be laid in such composition before the whole of said composition is rolled or tamped, and provided further, that after such sleepers are laid in such composition, and after the whole shall be so rolled and tamped, the whole shall be not less than four (4) inches thick in its thinnest part. Upon this composition and sleepers, shall be laid a wooden flooring of the quality now provided or hereafter. to be provided for in the building laws of the city of New Orleans, provided, however, that for the purpose of laying a tar-cinder composition floor, said wooden flooring shall be tongue and groove, well fitted, and the planks firmly set into each other, and the whole, in such manner as to prevent the ingress or egress of rats.
Sec. 4. Be it further ordained, etc., that every restaurant kitchen, hotel kitchen, cabaret kitchen, dairy, dairy depot, dock, wharf, pier, elevator, store, manufactory and every other building, outhouse or superstructure, wherein or whereon foodstuffs are stored, kept, handled, sold, held or offered for sale, manufactured, prepared for market or for sale, except stables, shall be rat-proofed in the manner provided for hereinabove as class A; provided that such part of any structure hereinabove defined as of class A, that shall be entirely over a body of water, may be rat-proofed as of class B, as hereinafter provided for.
“Foodstuffs,” as used in this ordinance, is hereby defined to be flour and flour products, animals and animal products, produce, groceries, cereals, grain and the products of cerea1? and grain, poultry and its products, game, birds, fish, vegetables, fruit, milk, cream and the products from milk or cream, ice cream, hides and tallow, or any combination of any one or more of the foregoing.
That every warehouse and wholesale store wherein dry goods/ shoes or other goods, wares or merchandise other than “foodstuffs,” • are stored, kept, handled, sold, held or offered for sale, manufactured or prepared for sale, except stables, shall be rat-proofed in the manner provided for hereinabove as class O; provided that “foodstuffs,” when contained in hermetically sealed containers, impervious to rats, may be stored, kept or offered for sale in class O structures.
All other buildings, outhouses and superstructures, except stables, not hereinbefore specified as class A or class O, and all buildings used exclusively for residential purposes, shall be rat-proofed in the manner provided for herein-above as class B; provided that the owner of any building, residence, outhouse or other superstructure in class B may, if he so elects, rat-proof same in the manner provided for in class A or in class O, and the owner of a class O structure may, if he so elects, rat-proof same as provided for in class A.
Provided, that in any case where, under the foregoing provisions, any building, outhouse or superstructure, is required to be rat-proofed as of class A and the said building or outhouse or superstructure is used, in part, for residential purposes, and the part'used as a residence is effectively separated from the part falling within class A, by permanently and effectively closing all openings above and below the ground floor, or by constructing a new wall, and in either case the W'hole, in such manner as to make such wall whole and continuous in its entirety, without doorways, windows or other openings, between the part used as a residence and that used for such purpose as makes it fall within class A, then, in such case, and for rat-proofing purposes only, the said building will after such separation, and closure of the openings, or by the construction of such new wall, be deemed to be two buildings, and that part used *612 exclusively for residential purposes may be rat-proofed in the manner provided for as_ a class B building, and the remaining part of said building shall be rat-proofed in the manner provided for a class A building.
Stables — All buildings now, or hereafter, to be constructed and used for stabling horses, mules, cows and other animals, shall be constructed as follows:
Walls — The walls of such building shall be constructed of concrete, brick or stone, laid in cement mortar, and shall be not less than six (6) inches thick, and shall extend into and below the surface of the surrounding ground not less than two (2) feet and shall extend above the ground a sufficient height to be not less than one (1) foot above the floor level. All openings in such foundation walls shall be covered with metal grating having openings not greater than one-half (%) inch between the gratings.
Floors — The floors of stables and stalls^ shall be of concrete not less than_ three (3)_ inches thick, upon which shall be laid a dressing not less than one-half (%) inch thick of cement or stone, laid in cement mortar, in such way as to prevent ingress or egress of rats, and such floors to have a slope of one-eighth (%) inch per foot to the gutter drains hereinafter provided for.
Stalls — The floors of stalls may be of planking, fitting either tightly to the concrete floor or elevated not more than one-half (%) inch from the stall floor, and so constructed as to be easily ' removable. Such removable planking shall be raised at least once a week, and the said planking and the concrete floor beneath thoroughly cleansed.
Gutters — Semicircular or Y-shaped gutter drains shall be constructed in such stables in such manner that a gutter shall be placed so as to receive all liquid matter from each stall, and each of these gutters to connect with the public sewer or with a main gutter of the same construction, which, in turn, shall be connected with the public sewer. All openings from drains into sewers shall be protected by a metal grating having openings not more than one-half {%) inch between the gratings.
Manure Pit — Each stable shall be provided with a manure pit to be sunk into the ground within or near to said stable, which pit shall be lined with cement so as to make same liquid tight, and to have a capacity of at least two and one-half cubic feet for each stall in said stable. Said manure pit shall be provided with a tight-fitted cover, divided into two parts, and so constructed as to render the contents of said pit inaccessible to flies.
Manure — Any manure in and about all stables shall be placed in said manure pit at least once a day. Manure shall be removed from said pit at least twice a week between March 15th and December 1st, and at least once a week between December 1st and March 15th. All manure so removed shall be placed in wagons so protected as to render said manure inaccessible to flies.
Mangers — Each manger shall be constructed so as to have a slope of two (2) inches towards the bottom, shall be covered with tin or zinc and shall be at least eighteen (18) inches deep to avoid spilling of food.
Feed Bins — All feed bins shall be constructed of cement, stone, metal or wood, and with close-fitting doors. If constructed of wood the bins shall be lined or covered with metal, and the whole so constructed as to prevent the ingress or egress of rats. All grain, malt and other animal food, except hay, stored or kept in any stable, must be kept in such feed bins. Said feed bins must be kept closed at all times except when momentarily opened to take food therefrom, or when same are being filled. No feed shall be scattered about such bin or stable, and all such feed found on the floor or in the stalls of said stables shall be removed daily and placed in the manure pits. No foodstuffs intended for or susceptible of human consumption shall be kept or stored in any stable or any other place where animals are kept
Sec. 5. Be it further ordained, etc., that the construction and materials used in rat-proofing shall conform to the building ordinances of the city of New Orleans, except and only in so far as the same may be modified herein.
Sec. 6. Be it further ordained, etc., that all accidental and unnecessary spaces and holes, ventilators and other .openings other than doors and windows in every building, outhouse and other superstructure in the city of New Orleans shall be closed with cement, mortar or other material impervious to rats or screened with wire having not more than one-half (%) inch mesh, as the case may require, and all wall spaces shall be closed with cement, mortar or other material impervious to rats, which closure shall extend the full thickness of the wall and shall extend upward at least twelve inches above the floor level, and the whole in such manner as to prevent the ingress or egress of rats. Provided that, in all buildings, outhouses and other superstructures of class A, class G, and in all stables, where there are any spaces in walls between the wall proper and the covering on same, or in ceilings between the ceiling and floor, or other ceiling covering above, said spaces shall be eliminated by the removal of said covering, or so closed with cement, mortar or other material impervious to rats as to prevent the ingress or egress of rats, provided that all such wall spaces shall be closed with cement, mortar or other material impervious to rats, which closure shall extend the full thickness of the wall and shall extend upward at least twelve (12) inches above the floor level.
¡Sec. 7. Be it further ordained, etc., that all premises, improved' and unimproved, and all open lots, areas, streets, sidewalks and alleys, in the city of New Orleans shall be kept clean and free from all rubbish and similar loose material that might serve as a harborage for rats and all lumber, boxes, barrels, loose iron and similar material that may be permitted to remain thereon, and that may be used as a harborage by rats, shall be placed on supports and elevated not less than two (2) feet from the ground, with *614 a clear intervening space beneath to prevent the harboring of rats.
Sec. S. Be it further ordained, etc., that all planking and plank walks on and in yards, alleys, alleyways, streets, ¡sidewalks or other open areas, shall be removed and replaced with concrete, brick or stone, laid in cement, gravel or cinders, or the ground left bare.
Sec. 9. Be it further ordained, etc., that it shall be the duty of every owner, agent and occupant of each building, outhouse and other superstructure, stable, lot, open area and other premise, sidewalk, street and alley, in the city of New Orleans, to comply with all the provisions of this ordinance.
Sec. 10. Be it further ordained, etc., that it is hereby made the duty of the department of public safety, and particularly through its health department (the city board of health), to enforce the provisions of this ordinance, provided that no affidavit shall be filed against any owner, agent, occupant or other person, charged with the duty of complying with the provisions of this ordinance, until thirty (30) days shall have elapsed after a communication shall have been deposited in the United States mail, addressed by said health department to such owner, agent, occupant or person, to his residence or to the premises upon which said violation shall be alleged to lie, which communication shall designate the character ■ of violation with which such person shall be charged and the location of the premises upon which the offense is alleged to lie.
Sec. 11. Be it further ordained, etc., that each day’s violation of any provision of this ordinance shall constitute a separate and distinct offense.
Sec. 12. Be it further ordained, etc., that any person violating any provision of this ordinance-shall on conviction be punished by a fine of not less than ten ($10.00) dollars, nor more than twenty-five (¡¡>25.00) dollars, or in default of the payment of such fine by imprisonment in the parish jail for not less than ten (10) days nor more than thirty (30) days, or both, at the discretion of the recorder having jurisdiction of the same. ,
Article 319 of the Constitution requires all officers charged with the exercise of the police power of the city of New Orleans to be elected by the electors of the city, and article 141 says that the Legislature shall provide for recorders’ courts in said city. Section 21 of the city charter, which is Act 159, p. 253, of 1912, provides that:
“There shall be not less than three recorders’ courts in the city of New Orleans, and the judges of these courts shall be chosen by the commission council.”
[1,2] The accused made the objection in the lower court that the recorder’s court, before which he was brought for trial, had been created by the commission council, and not by the Legislature, and that it had, therefore, no legal existence. But he offered no evidence in support of this allegation of the said court having been created by the commission council, and we have no knowledge of that fact, if it be a fact. We cannot take judicial notice of city ordinances. Burke v. Tricalli, 124 La. 774, 50 South. 710. In the absence of such proof, the presumption is that said court was created by said section 21 of the city charter. Not that we wish to intimate that said court would have no legal existence even though created as alleged.
[3] Accused made the point also that ,the election of the recorders by the commission council, instead of by the electors of the city, is in violation of said article 319 of the Constitution, and that therefore the recorder before whom he was brought to trial was without authority to try him. But nothing is better settled than that an accused has no standing for contesting the legality of the appointment of the judge before whose court he is brought for trial. Where the court itself has a legal existence the judge is such de facto, if not de jure.
[4] It will be noted that said ordinance requires the foundations of buildings to be of brick or stone laid in cement or of concrete. The accused says that a property holder has the right to use for the foundation of his buildings any material equally impenetrable to rats as those here named, and that to restrict him of that right is unconstitutional. Perhaps so; but, until some one has desired to use such other equally impenetrable material, and has been prevented from doing so, we do not see that there is any occasion for considering that question.'
[5] Accused says, also, that said ordinance is not based upon any health considerations,, since it requires all premises to be rat-proof *616 ed, irrespective of whether same are or are not in a sanitary condition.
The answer is that modern science has ascertained that, in a plague-stricken city,premises which may afford a harbor for rats are a menace to the public health, and in that sense are highly unsanitary, no matter how sanitary they might be in the ordinary sense.
[6] The ordinance requires that when there is space between the bottom of the sills of a building and the ground this space must be of not less than 18 inches. Accused says that this is arbitrary and unreasonable, forgetting that since 1879 (Ord. 6022, A. S., § 12; Ord. 7208, A. S., of July 12, 1881; Ord. 6712, N. O. S.; section 3, Ord. 6533, C. S., 1892; section 23, Ord. 6533, C. S.) buildings have been required to have a greater elevation than this. These ordinances were offered in evidence in the Beck Case, 71 South. 883, [1] this day decided. Moreover, accused is not concerned with that feature of the ordinance, since it is not in that respect that he is charged with having violated the ordinance.
[7] The next ground of complaint is that the city itself is not named among the property holders who are required to rat-proof their premises.
The complaint here is not that the city d.oes not rat-proof her premises in the manner required by this ordinance, but that she has not specifically named herself in the ordinance, and has not denounced a penalty .against herself for failure to rat-proof her premises. This point is so evidently without merit that we do not think it needs any discussion.
[8] It is next said that the penalty is not certain or fixed because it is so much for each day. What more certainty and fixation is needed than this we cannot imagine.
[9] Next, it is said that the ordinance does not provide by what particular officer the 30 days’ notice to rat-proof shall be given or served.
The city of New Orleans is provided with officers for giving official notice; we do not see what more by way of notice a property holder could need than a notice emanating from, and served upon him by, them.
[10]Next, it is said that bubonic plague is a contagious disease which might spread beyond the limits of the city, and which is therefore a state-wide affair, and as such is cognizable only by the state board of health.
Here again is a point which we do not think needs discussion.
Judgment affirmed.
SOMMERVILLE and O’NIELL, JJ., take no part.

Ante, p. 595.