SOMMERVILLE, J.
[1] John C. Schuer-mann and George A. Roussell, defendants, were charged with having intruded themselves into the house of a woman and then and there threatening to accuse her of keeping a house of prostitution, intending by so doing to extort money from her, under the provisions of Act No. 110 of 1908, p. 166. They were convicted and sentenced, and they have appealed. They rely upon 76 bills of exceptions found in the record for a reversal of the verdict and sentence imposed upon them; but, as counsel has not argued, either orally or on briefs, 24 of these bills, we assume that they have been abandoned, and we shall therefore not consider them in this opinion. They have been examined and found to be without merit.
[2] Bill of Exceptions No. 1. — This bill was taken to the overruling of a motion filed by defendants, and styled:
“Protest and plea to the jurisdiction, authority, right, and competency of Hon. James O’Connor to sit or act as judge ad hoc of this court.”
This motion, in substance, sets'.up that the appointment of James O’Connor, judge ad hoc of section B of the Criminal District Court for the parish of Orleans was illegal, null, and void, and that the judges of the civil district court, sitting en banc, were not authorized, and had no authority, to appoint a judge ad hoc to the criminal district court to serve in place of Frank D. Chnétien, one of the judges of that court, during the time of the disability of Judge ChrStien on account of sickness.
It is contended by defendants that under the provisions of article 139 of the Constitution that it is provided that the criminal district court shall, among other things, “adopt rules not in conflict with law, regulating the order of preference, and proceedings in the trial of cases, and the method of allotting or assigning such eases, and of reallotting or reassigning them, in case of vacancy in office, recusation, absence or disability of one or more of the judges, or in case such action is deemed necessary for the proper administration of justice,” and that it was not within the power of the judges of the civil district court, sitting en banc, to appoint a judge ad hoc to the criminal district court.
Article 130, as amended in 1918, is in the following words:
*115 “Act No. 116, Joint Resolution.
“A joint resolution proposing an amendment to article 130 of tlie Constitution of the state of- Louisiana, relative to judicial officers for the parish of Orleans.
“Section 1. Be it resolved by the General Assembly of the state of Louisiana, two-thirds of all members elected to each bouse concurring, that the following amendment be submitted to the electors of this state, for their approval or rejection, at the election to be held on the first Tuesday after the first Monday in November, 1918.
“Art. 130. Except as herein otherwise provided, the judicial officers of the parish of Orleans, and of the city of New Orleans, shall be learned in the law, and shall have resided and practiced law or shall have held judicial position in this state for five years, and shall have been actual residents of the city of New Orleans for at least two years next preceding their election or appointment. The General Assembly of the state of Louisiana may, as the public interest requires, provide for the trial of cases by an interchange of said judicial officers, as well as by the appointment of judges ad hoc, in case of vacancy in an office until said office be filled, and to act for and in the stead of any judicial officer who by reason of disability, or any cause whatsoever is prevented from holding court.
“Judges ad hoc shall be selected from licensed attorneys at law who shall possess the same qualifications required for judicial officers for whom they act; their compensation shall be provided for without expense to the state of Louisiana, and be paid by the city of New Orleans, or out of the judicial expense fund of the said parish.”
Section 2 of the act provides for the submission of the amendment to the people. It was submitted and adopted on November 6, 1918.
And Act 117 of 1918, immediately following Act 116, which embraces the joint resolution, went into effect, as was provided it should in the event of the adoption of the amendment. Section 1 of Act 117 provides as follows:
“Be it enacted by the General Assembly of the state of Louisiana, that in the event the proposed amendment to article 130 of the Constitution of the state of Louisiana be adopted, that the judges of the civil district court for the parish of Orleans shall when notice be brought to their attention by any party at interest, that a judicial officer of the .parish of Orleans, judges of the Court of Appeal excepted, is unable to hold court by reason of the disability of the judge, or for any cause whatsoever, or that court is not held by reason of temporary vacancy in the office, as the public interest requires, said judges shall sit en banc and proceed to call upon any judicial officer for the parish of Orleans, judges of the Court of Appeal excepted, or name a judge ad hoc, to act for and in the stead of the absent judge, to hold said court and discharge all the duties of the judge so disabled, or to fill the vacancy and discharge the duties of the office, during said disability or until the vacancy be filled.”
The judges of the civil district court, sitting en banc, under the authority of the act just referred to, appointed James O’Connor judge ad hoc to sit in the place of Judge Chretien during the latter’s disability to act as judge. This action of the civil district court was in accordance with law, and it constituted James O’Connor a de facto officer of the parish of Orleans; he having taken the oath of office prescribed by the Constitution to be taken by officers. He was exercising the duties of the office of judge under color of appointment.
[3] That appointment cannot be attacked collaterally. We said in the case of State v. Sadler, 61 La. Ann. 1397, 26 South. 390:
“Upon an investigation of the authorities, we find that the prevailing rule is therein recognized to be that the rights and powers of an officer can only be inquired into by suit, to which he is a party, and that one exercising the duties of an office, to which he originally had an unquestioned title, cannot be successfully attacked collaterally. An officer de facto is one who exercises the duties of an office under color of appointment or election to that office, or who has the reputation of being the officer he assumes to be. He differs on the one hand from a mere usurper of an office who undertakes to act as an officer without color or right, and on the other from an officer de jure who is, in all respects, legally appointed and qualified to exercise the office. The rights and powers of a judge de facto can only be inquired into by a suit to which he is a party; that is to say, by. quo warranto, at the suit of 'the state.”
“The interest- of the public requires that some-’ *117 body should exercise the duties and functions of the various offices pending a litigation concerning them, and no one has a better right to do so than the various, officers de facto, who claim to be officers de jure.” State v. Durkee, 12 Kan. 314.
“The- reason of public policy, upon which it is held the acts of an officer de facto are not to be called in question collaterally, but are valid as to third persons, may apply even to the case where such officer is a usurper and intruder. This principle has been applied in England to the most important office. * * * Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office, even so far as to see that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acquiesced in, they are entitled to treat him as such officer, and, if they employ him as such, should not be subjected to the danger of having his acts collaterally called in question.” Petersilea v. Stone, 119 Mass. 465, 20 Am. Rep. 335.
The only method, of attack upon the right of Judge O’Oonnor to sit as judge ad hoc of the criminal district court is by a quo war-ranto proceeding filed against him. That is not this case. The attack cannot be made collaterally.
[4] Bill No. 2. — This bill was reserved to the ruling by Judge O’Connor on a motion by defendants asking him to recuse himself as judge, on the ground that he had no right to sit and try the defendants.
That is not one of the causes set forth in the law for recusing a judge. Defendants argued that Judge O’Connor was interested in the cause, and therefore should have re-cused himself. The judge of a court cannot be said to have an interest in the causes which are being tried before him, particularly criminal cases, in which the state is the plaintiff, unless the judge is an actual party to the litigation, or has some pecuniary interest therein. Judge O’Connor was not a party to this case in any sense of the word. If his title to office is to be questioned, it must be done in a proceeding against him- individually ; it cannot be done collaterally, or in the case of the state against these defendants.
Under the circumstances of this case it was entirely competent for Judge O’Connor to hear the motion to recuse him, and to determine whether he should recuse himself or not. It was a matter of indifference whether Judge O’Connor heard the motion, or whether another heard it. His appointment to the office was legal. He had a right to try this case, and he certainly had a right to try the motion to recuse him; and by so doing he did not cause the accused any injury, or deprive them of any right to which they were entitled. In the case of State v. Morgan, 142 La. 755, 764, 77 South. 589, 591, we say:
“It would be an unreasonable proposition to maintain that a motion for recusation that does not set forth a cause for recusation should be referred by the judge to whom it is addressed to another judge to determine whether the aver-ments in the motion are true.”
[5] Bill No. 3. — This bill was taken to the overruling of a motion to quash the information, and bill No. 67 was reserved to the refusal of the court to sustain a motion in arrest of judgment on the same ground.
The information was drawn under Act 110 of 1908, p. 166, which is an act amending Act 63 of 1884, entitled:
“An act to provide for the punishment of the offense and crime of attempting to extort money or any property or valuable thing, through or by means of threats, threatening letters or communications, or by means of other unlawful acts or devices.”
The act provides in part:
“If any person shall follow or pursue, or maliciously intrude himself or herself upon another at his or her home, place of residence, or at his or her place of business, office, or at the office or place of business where he or she may be engaged or employed, * * * or to accuse or cause to procure him or her, or any member of his or her family, to be accused of any fault, crime, ■ offense or • misdemeanor, or to make known or cause to be made known, any [of] his *119 or her or any member of his or her family’s faults, misfortunes, infirmities or failings, or to injure or impair in any manner or by any means his or her good name or reputation, or that of any member of his or her family, or to subject him or her, or any member of his or her family, to any public scandal or ridicule, or unpleasant notoriety, with intent to extort money,” etc.
—shall be punished therefor. The information in this case charges undoubtedly the several elements of crime mentioned in the statute, to the effect that the defendants intruded themselves into the home of a woman, and then and there threatened to accuse her of beeping a house of prostitution, intending by so doing ,to extort money from her. The information being clearly within the terms of the law, it is valid, and the motion to quash was properly overruled.
[6] Defendants say that they should have been charged and prosecuted under Act No. 26 of 1873, as amended by Act 57, of 1888, p. 59. That act applies to persons holding offices in the several departments of the government, who, in addition to their salaries, appropriate or receive compensation beyond their salaries. The act has no application to the crime of extorting money.
[7] Bill No. 4. — This bill was reserved to the refusal by the judge to order the state to furnish a bill of particulars. The per curiam of the judge fully explains the point, and it is sufficient:
“The information in this case charges defendants as principals, and therefore charges each of the accused with the offense therein set forth. It alleges the time and place, the threat used to extort money, the intent, and the amount of money sought to be extorted, and the person whom they threatened to accuse of operating a disorderly house with the intent to extort money.
“No further particulars could have informed the defendants more fully of the crime charged, in order to permit them to properly prepare their defense, and the state is not compelled to sot forth its evidence in the information .or in a bill of particulars.”
[8] Bill No. 5. — The bill was taken to the refusal of the court to grant a continuance of the trial of the case. This is a matter largely in the discretion of the district court, and its ruling thereon will not lightly be disturbed. The minutes of the court show that when the case was called for trial on March 24 that it was continued, by “consent of both the state and the defendants, to March 31,” when the case was actually tried.
[9] Bills Nos. 6, S, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23 were reserved to rulings on the examination of the jurors on their voir dire, who had been challenged for cause. None of the jurors, except the last, Edward Levy, served as a juror. He was the twelfth juror, and he was selected after defendants had exhausted their 48 challenges. (There were four persons charged and on trial. Two were discharged.)
The examination of the jurors on their voir dire has been brought up in the record; but bill No. 23 contains only a portion of the examination of the juror Levy. The judge, to his per curiam, attached the entire testimony of the juror, and we agree with the trial judge that the said juror was competent. The juror Levy had answered that he had heard about the case, read of it in the newspapers, and had an opinion, which opinion had varied from time to time, depending upon whose statements were being published, and in answer to the questions propounded by the defense he said:
“Q. From all the discussions you have had, and your reading you formed an opinion at all? A. A slight opinion. Q. And that opinion you still have? A. Yes, sir. Q. That opinion you would take in the jury box with you? A. I would take that small opinion with me; yes, sir. Q. And to remove that opinion it would require evidence? A. It would require evidence.”
The juror had further sworn that he did not know any one of the parties to the suit; *121 that he had read about the ease, and that any impression or opinion he had formed would readily yield to evidence; that he could and would disregard his opinion for the purpose of the trial, if sworn as a juror; that it would not affect him in any way; that he would disregard that opinion and impression; that he would give defendants a perfectly fair and impartial trial, and that what he had read was newspaper tails, which had left an impression, to a certain extent, on his mind; that he had changed his mind with reference to the case at different times; he had not expressed any opinion on the case, or rather any decided opinion, to any one, as to the guilt or -innocence of the accused; that he had no prejudice against the accused; that because the prosecuting witness was a woman would not weigh with him; that he would give the defendants the benefit of all reasonable doubts; that he knew that the law presumed all men innocent until their guilt was proved by the state beyond a reasonable doubt; that if the evidence offered by the state was confusing, and the defendants offered no evidence, that he would give the accused the benefit of the doubt, and in such case his verdict would be not guilty; that his opinion of the case was a slight one, which would, if sworn as a juror, vanish, and he would give the defendants a fair and impartial trial.
We hold with the trial judge that the juror was competent.
The examination of the other tales jurors was about to the same effect, and the challenges for cause were properly overruled.
Bill No. 7. — Defendants complained of what they termed an inflammatory editorial in the Times-Picayune newspaper, which was published during the impaneling of the jury, and which they say had biased and poisoned the minds of the jurors against the accused; that the editorial was in contempt of court and of the rights of the accused.
The court refused to Stop the trial of the case, and to issue a rule for contempt to the editor of the Times-Picayune. The editorial complained of forms part of the bill of exceptions and we see nothing objectionable in it. We cannot conceive how it might have had any prejudicial effect upon the accused.
[10] Bills Nos. 24, 25, 27, 28, 29, 32, 33, 34, 40, 41, and 43. — These several bills were reserved to the testimony of Mrs. Yarbrough, the prosecuting witness, and to Mr. Coulton, another witness for the state. It appears that the state, after having proved the charges contained in the information, asked the prosecuting witness about other unlawful demands for money said to have been made by defendants on other dates than those set forth in the information. The per curiam of the trial judge which follows is full and •satisfactory. The evidence was competent:
“The state had already proved that on the date set forth in the information that money had been demanded from the prosecuting witness, Mrs. Olah Yarbrough, under the threat as set forth in the information, by one of the defendants in the presence of the others. It was therefore admissible to prove the making of similar demands from the same prosecuting witness by the defendants on prior dates at the same place, and this was part of the transaction, which was a continuous one.”
[11] Bill No. 30. — This bill was reserved to a remark made by the judge ad hoc to the effect that he considered the manner in which a certain suggestion made by one of the counsel of defendants was obnoxious. There was no ruling by the court, and there is nothing presented in the bill to be reviewed.
Bill No. 31. — This bill was reserved “to a demonstration in the courtroom,” which was very slight, and which the judge immediately suppressed. We fail to see how defendants were affected by the demonstration.
*123 [12] Bill No. 40. — This bill was to the ruling of the court permitting the district attorney to recall a witness for further cross-examination, after he, the district attorney, had stated that he had discovered facts after the witness had left the stand which were material. There was no error in the ruling.
Bill No. 48. — This hill was reserved to a question propounded by the court to the witness referred to in the last bill. There was no error in overruling an objection thereto.
[13] Bills Nos. 49 and 62. — There appears to be some confusion as to these two bills. If appears from the record that defendants offered the testimony of Mrs. Yarbrough, a witness for the state, and which had been taken in the Second city criminal district court and before the chief of police. This evidence was not objected to by the plaintiff, and it formed part of the record. It was therefore admissible for the district attorney ■ to read it to the jury.
The testimony of Gypsy Schaeffer, taken in the Second city criminal court, and offered by defendants in the same offer and at the same time, was objected to by the state. The objection was sustained. It was not part of the evidence in this ease, and it was not used by the district attorney in his argument be-for the jury. The bill is without merit.
[14] Bill No. 56. — It appears that defendants had moved, and the court had ordered, that the witnesses should be separated, and that a witness for the state had been recalled and examined, who had heard part of the testimony for defendants.
This matter is in the discretion of the trial judge. He says that he permitted the witness to remain in court after he had testified, not knowing, and the witness not knowing, that he, the witness, would be called in rebuttal. The reasons of the judge are sufficient.
Bills Nos. 66 and 67. — These bills were reserved to the rulings of the court on the motions for a new trial and in arrest of judgment. The matters therein contained have been considered in disposing of the bills of exceptions covering the same points.
The judgment appealed from is affirmed.
O’NIELL, J., concurs in the decree.