418 So.2d 1321 (1982)
CITY OF BATON ROUGE
v.
Carlton COOLEY.
CITY OF BATON ROUGE
v.
Charles David HOPE.
No. 81-K-3069.
Supreme Court of Louisiana.
June 21, 1982.
Rehearing Denied September 3, 1982.
Dissenting from Denial of Rehearing September 24, 1982.
*1322 Dennis R. Whalen, Baton Rouge, for relator.
Ralph E. Tyson, City Prosecutor, Carlos G. Spaht, Kantrow, Spaht, Weaver & Walter, Baton Rouge, for respondent.
CALOGERO, Justice.
By affidavits filed in the Baton Rouge City Court Carlton K. Cooley and Charles David Hope were each charged with traffic offenses, including second offense D. W. I. When defendants appeared for trial of their separate cases on May 28, 1981, both, through the same attorney, objected to being tried by the Honorable Byron Stringer, judge ad hoc. The "motion on jurisdiction of ad hoc judge" was denied as to each defendant and proceedings stayed pending applications for writs. Defendant applied to the Nineteenth Judicial District Court.[1] Lodged as appeals in that court, the cases were argued orally before the Honorable Carl A. Guidry who denied the appeals as to both defendants and "affirmed the decision of the lower court." Defendants sought and were granted writs from this Court. 411 So.2d 460 (La.1982).
Judge Darrell White, a duly elected judge of the Baton Rouge City Court, appointed Judge Stringer city judge ad hoc to preside in Section V of the City Court during a temporary absence of Judge White. Judge White made the appointment pursuant to La.C.C.P. art. 4865 which provides:
When a parish or city court judge is unable to preside due to temporary absence, incapacity, or inability, he may appoint a judge ad hoc, who may be another judge or who may be a lawyer domiciled in the parish who possesses the qualifications of the judge he replaces. Appointment shall be by order, which shall reflect the term of and reasons for the appointment, and which shall be entered into the minutes of the court.
Relators do not question that the appointment was made, nor that Judge Stringer presided in City Court following appropriate compliance with and by virtue of an ad hoc appointment made under the above statute. Rather, relators contend that La. C.C.P. art. 4865 is unconstitutional because contrary to Article V, § 22 of the Constitution of 1974. That section of the Constitution provides, in effect, that all judges shall be elected, except as to newly created judgeships or vacancies in judicial office. In the latter situations this Court, for a limited period, "shall appoint a person meeting the qualifications for the office, other than domicile, to serve at its pleasure."[2]
Arguments in support of the position of respondent, City of Baton Rouge, are that Article V, Section 22 affects only constitutional judgeships; that city court judgeships *1323 have traditionally been, and still are (even under the 1974 Louisiana Constitution) legislatively created judgeships; that the Legislature is not barred constitutionally from prescribing a method for the appointment of temporary replacement or ad hoc, city judges; that the Legislature has made provision for ad hoc judges in city courts by legislation dating back to 1898[3], and that Chappius v. Reggie, 222 La. 35, 62 So.2d 92 (1952), supports their constitutional argument.
We find it inadvisable, if not improper, to decide this close constitutional issue in a case brought by litigants who are questioning the authority of the judge before whom they have been brought on criminal charges.
Our jurisprudence is of long standing, and has consistently been followed, that a judge acting under color of right has the authority, capacity and right to perform his judicial duties; that such capacity cannot be challenged collaterally (State v. Lewis, 22 La.Ann. 33 (1870); State v. Williams, 35 La.Ann. 742 (1883)); that the acts of a de facto judge, even if he is not de jure, are valid and binding (State v. Sanderson, 169 La. 55, 124 So. 143 (1929); State v. Cullens, 186 La. 976, 123 So. 645 (1929); State v. Phillips, 164 La. 5987, 114 So. 171 (1927); State v. Smith, 153 La. 577, 96 So. 127 (1923); Guilbeau v. Cormier, 32 La.Ann. 930 (1880); New Orleans Canal and Banking Co. v. Tanner, 26 La.Ann. 273 (1874)); that the only method of attack upon the right of a judge to sit ad hoc who exercises the duties of an office under color of appointment or election is by a quo warranto proceeding filed against him (State v. Sadler, 51 La.Ann. 1397, 26 So. 390 (1899); State v. Schuermann, 146 La. 110, 83 So. 426 (1919)).[4]
A very early expression of the foregoing rule is found in State v. Lewis, 22 La.Ann. 33, 34 (1870), in which this Court said: "[T]he capacity and right [of a person who performs the duties of the office of Parish Judge] to perform these duties can not be inquired into collaterally."
In State v. Williams, 35 La.Ann. 742 (1883), the defendant challenged his conviction, attacking the right of the person who officiated as district judge to act in that capacity. The Court responded:
Such right cannot be assailed in that form. Direct and regular proceedings are indispensable in the name of the State, when the person acts under color of right. It is a mistake to suppose that it is the right or privilege of every citizen to champion, even in informal and collateral proceedings, rights which the State can alone assert. See 33 An. 1413, and authorities there cited.
It is not claimed that the person filling the office of District Judge, and who *1324 acted in this case, is a mere trespasser or usurper, without any color of right.
On the contrary, it appears that he was elected under a law expressly passed for the purpose of the election.
The objection to the constitutionality of that law, raised by the defendant, cannot be considered at his instance in this proceeding. 35 La.Ann. 742
City of New Orleans v. Mangiarisina, 139 La. 605, 71 So. 886 (1916), a leading case on the subject, also involved an attack upon the legality of the appointment of a judge, that of the recorder's court in New Orleans (apparently a predecessor to the present Municipal Court for the City of New Orleans). Defendant in a criminal proceeding protested that the selection of that official by the commission council of the City of New Orleans, rather than by election by the people, rendered that official without authority to try him. This Court rejected defendant's contention, stating: "But nothing is better settled than that an accused has no standing for contesting the legality of the appointment of the judge before whose court he is brought for trial. Where the court itself has a legal existence the judge is such de facto, if not de jure." 139 La. at 614, 71 So. at 889.
The validity of the acts of a judge appointed to sit ad hoc was again before the Court in State v. Schuermann, 146 La. 110, 83 So. 426 (1919). The judges of the Civil District Court for the Parish of Orleans, sitting en banc, appointed a judge ad hoc to sit in place of a judge of the Criminal District Court for the Parish of Orleans during the latter's disability to act as judge. The appointment was in accordance with Act 117 of 1918 and the contention was made that the statute did not comport with the applicable constitutional provision (Article 130 of the 1913 Louisiana Constitution). This Court again asserted that the appointment could not be attacked collaterally and that the only method of attack upon the right of the judge to sit as judge ad hoc of the Criminal District Court is by a quo warranto proceeding filed against him. The Schuermann Court quoted State v. Sadler, 51 La.Ann. 1397, 1402, 26 So. 390, 392 (1899):
Upon an investigation of the authorities, we find that the prevailing rule is therein recognized to be that the rights and powers of an officer can only be inquired into by suit, to which he is a party, and that on exercising the duties of an office, to which he originally had an unquestioned title, cannot be successfully attacked collaterally. An officer de facto is one who exercises the duties of an office under color of appointment or election to that office, or who has the reputation of being the officer he assumes to be. He differs on the one hand from a mere usurper of an office who undertakes to act as an officer without color or right, and on the other from an officer de jure who is, in all respects, legally appointed and qualified to exercise the office. The rights and powers of a judge de facto can only be inquired into by a suit to which he is a party; that is to say, by quo warranto, at the suit of the state.
The interest of the public requires that somebody should exercise the duties and functions of the various offices pending a litigation concerning them, and no one has a better right to do so than the various officers de facto, who claim to be officers de jure. State v. Durkee, 12 Kan. 314.
... Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office, even so far as to see that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acquiesced in, they are entitled to treat him as such officer, and, if they employ him as such, should not be subjected to the danger of having his acts collaterally called in question. Petersilea v. Stone, 119 Mass. 465, 20 Am.Rep. 335.
*1325 In the case under consideration, Judge Stringer was not a usurper of an office who was acting without color of right. Rather, he was at least a de facto officer with a judicial appointment made in conformity with a statute passed by the Legislature of this state.[5]

Decree
For the foregoing reasons the ruling of the judge ad hoc of the City Court of Baton Rouge denying relators' motion and the ruling of the Nineteenth Judicial District Court for the Parish of East Baton Rouge affirming that decision are affirmed.
AFFIRMED.
WATSON, J., concurs in the result, being of the opinion that this Court should decide the case on the merits and hold that the City Courts are properly authorized by the Legislature to appoint substitute Judges.
DIXON, C. J., dissents not being satisfied with the constitutionality of the appointment, nor the holding that there is remedy.
LEMMON, J., dissents.
LEMMON, Justice, dissenting From Denial of Rehearing.
C.C.P. Art. 4865 is useful, but unconstitutional. La. Const. Art. V, § 22 clearly states that all judges shall be elected, except for a situation involving a vacancy or a newly created judgeship, in which case this court may appoint temporarily a person possessing the qualifications of office to serve until the election to fill the vacancy or the newly created judicial office. In the present case a lawyer, who was not an elected judge, was appointed to a judicial position which was not newly created and in which there was no vacancy. That appointment was therefore clearly violative of the unambiguous terms of the constitution.
The persons who complained about the unconstitutional appointment in this case were persons whose guilt or innocence (and therefore whose freedom or property) depended upon the decision of a person unconstitutionally acting in a judicial office. It is illogical to hold that these defendants did not have a legitimate interest in testing the validity of the appointment. Contesting the constitutionality of the statute, under which a nonelected judge was illegally appointed to try them, was just as important to them as contesting the constitutionality of the statute which defined the crime with which they were charged.[1] The approach taken by this court does not adequately protect the rights of litigants to have their cases decided by judges who have been approved by the electorate or by this court under a specific constitutional power of appointment.
C.C.P. Art. 4685 should be declared unconstitutional, and the convictions by a judge serving under an unconstitutional appointment should be set aside. Defendants should be retried by a judge who was elected to office or constitutionally appointed.
NOTES
[1] La.R.S. 13:1896(B) provides that review in a situation such as this is by appeal to the district court of the parish in which the court of original jurisdiction is located.
[2] The full text of Article V, § 22, Louisiana Constitution of 1974 is as follows:

Section 22. (A) Election. Except as otherwise provided in this Section, all judges shall be elected. Election shall be at the regular congressional election.
(B) Vacancy. A newly-created judgeship or a vacancy in the office of a judge shall be filled by special election called by the governor and held within six months after the day on which the vacancy occurs or the judgeship is established, except when the vacancy occurs in the last six months of an existing term. Until the vacancy is filled, the supreme court shall appoint a person meeting the qualifications for the office, other than domicile, to serve at its pleasure. The appointee shall be ineligible as a candidate at the election to fill the vacancy or the newly-created judicial office. No person serving as an appointed judge, other than a retired judge, shall be eligible for retirement benefits provided for the elected judiciary.
(C) End of Term. A judge serving on the effective date of this constitution shall serve through December thirty-first of the last year of his term or, if the last year of his term is not in the year of a regular congressional election, then through December thirty-first of the following year. The election for the next term shall be held in the year in which the term expires, as provided above.
[3] Acts 1898, No. 169 established a "Court for the City of Baton Rouge" with the judge to be elected by the Council. The act further provided that "in the absence or disability of the City Judge, [the Mayor] be vested with jurisdiction to try and punish offenders against the city ordinances." See also: Acts 1902, No. 60; Acts 1906, No. 156; Acts 1910, No. 161; Acts 1910, No. 177; Acts 1924, No. 243; Acts 1930, No. 17; Acts 1936, No. 260; Acts 1944, No. 257; Acts 1958, No. 252.
[4] Statutory provisions concerning the writ of quo warranto [See Code of Practice of 1870, Part II, Title I, Chapter 11, Sec. 2, Par. 4 "Of the mandate to prevent and usurpation of office (Writ of Quo Warranto), Articles 867-873] are today incorporated in La.C.C.P. art. 3901, Quo Warranto, and Revised Statutes Title 42 (Public Offices and Employees) Chapter 3 (Right to Office) Sections 71-87. La.R.S. 42:76 relates to "actions to try right of office; ..." and provides that an action shall be brought in the name of the state by the attorney general or by the parish district attorney, with suit to be filed in the district court of the parish in which the case arises "when any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within this state."

Under La.C.C.P. art 3901 "Quo warranto is a writ directing an individual to show by what authority he claims or holds public office... Its purpose is to prevent usurpation of office or of powers." The official revision comment to La.C.C.P. art 3901 recites that the "provision referring to public office was incorporated on the theory that the Intrusion into Office Act, R.S. 42:76 et seq., does not give an individual the right to file suit except when he is claiming the office."
[5] Incidentally, Judge Stringer has since been elected a judge of the Baton Rouge City Court.
[1] The competency and qualifications of the temporary appointee in this case are not at issue. However, irrespective of the merits of any particular appointment, one obvious purpose of the constitutional limitation on every appointment is to minimize appointments prompted by improper considerations (such as when a politically influential person desires to have a friend or relative temporarily appointed to a judgeship so that his photograph on the bench can be used in an upcoming campaign for another judicial office).