Dear Mr. Boudreaux:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub. The request has been assigned to me for research and reply. You request an interpretation of LSA-R.S. 34:2471 in connection with the selection of a commissioner to the Port of South Louisiana Commission. Your request also provided information pertinent to this issue in that you note that the nomination by the parish president and the counsel approval of the nominee occurred more than sixty days after the parish president took office.
You state that the parish president for St. John the Baptist, Nickie Monica, nominated William Hubbard as a Commissioner from St. John the Baptist Parish on March 14, 2000 and secured a 6-1 vote of the council for approval with two members of the council being absent at the time of the vote. You further note that notice of the appointment was provided to the Port of South Louisiana and Mr. Hubbard was sworn in at the Port Commission meeting on March 15, 2000 replacing the existing Commissioner. Your request further states that the nomination by Mr. Monica and the council approval occurred more than sixty days after Mr. Monica took office, on January 10, 2000.
You've requested advice on the following issues:
 1. Does the failure of the parish president to make an appointment and secure the concurrence of the council within sixty days of taking office deprive him of the right to make the appointment?
 2. If the answer to question No. 1 is in the affirmative, what is the status of Commissioner William Hubbard?
 3. What are the legal effects of Mr. Hubbard participating in votes on the actions of the Port Commission while serving as a Commissioner?
 4. What is the status of the Commissioner who served prior to the appointment of Mr. Hubbard?
 5. Does the governor have the right to assume the power to make the appointment of the parish appointee at any time in the future?
 6. If the governor appoints someone other than Mr. Hubbard, would that action automatically have the effect of replacing Mr. Hubbard?
 7. What legal process should be followed to insure that there is a legally appointed Commissioner from the parish of St. John the Baptist?
LSA-R.S. 34:2471 provides in pertinent part:
(A) There is hereby created the Port of South Louisiana, as a political subdivision of the state, with jurisdictional authority encompassing the geographical boundaries of the parishes of St. Charles, St. John the Baptist, and St. James. The Port of South Louisiana shall be governed by a board of commissioners to be known as the "Port of South Louisiana Commission", which shall be composed of seven members who shall be appointed as follows:
 (1) One member from each parish within the territorial jurisdiction of the port who is a resident of such parish, who shall be appointed by the respective parish president with the concurrence of two-thirds of the members of the parish council of that parish from the nominees submitted to him by the following organizations which shall each submit one nominee:
 (2) (a) If any parish president fails, within sixty days of taking office, to submit a name for appointment from his respective parish as provided in Paragraph (1) of this Subsection, or if he fails to get concurrence of two-thirds of the respective parish council on any such appointment, the commissioner from that parish shall be appointed by the governor.
Also of significance is Section 2 of Acts 1997, No. 1023, which amended this statute. Section 2 of the Act states, "the provisions of this Act shall apply to every appointment made to fill any vacancy existing on or after January 1, 1997. After January 1, 1997, any appointment pursuant to the provisions of LSA-R.S. 34:2471(A)(1) which is made more than sixty days after the position becomes vacant shall be null and void and the position shall be considered vacant."
Considering the above, it is the opinion of this office that the failure of the parish president to make an appointment and secure the concurrence of the council within sixty days of taking office does, in fact, deprive the parish president of the right to make the appointment under the clear provisions of LSA-R.S.34:2471(2)(a). It is also the opinion of this office that the status of the newly appointed commissioner is null and void and the position should be considered vacant.
Your request concerning the legal effect of Mr. Hubbard's votes, and any action taken by the Port Commission must be considered in light of the long standing jurisprudential rule called the "de facto doctrine."
In State v. Hargis, 154 So. 628 (La. Supreme Court 1934), the court held:
 A person is a de facto officer where he exercises the duties of an office under color of a known and valid appointment or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. Vide, `Public Officer,' 22 R. C. L. § 306, p. 588.
 A de facto officer is no more a usurper than is a de jure officer. As long as he is in possession of the office he will be a de facto officer, and all acts performed by him in the exercise of his official functions and strictly within the limits of existing statutes will be considered legal. This is from consideration of public policy.
 The de facto doctrine was introduced into the law as a matter of policy and necessity to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. 22 R. C. L. § 307, p. 589.
 And the acts of an officer de facto are as valid and effectual where they concern the public or the rights of third persons, until his title to the office is adjudged insufficient, as though he were an officer de jure. 46 C. J. § 378, p. 1060.
In Feinblum v. La. State Board of Optometry Examiners,97 So.2d 657 (La.App. 1st Cir. 1957), the court said:
 It is also well settled that the right of a de facto officer to exercise the functions of an office cannot be attacked collaterally, but that a direct proceeding to try title to the office is necessary. State v. Sadler Campbell, 51 La. Ann. 1397, 26 So. 390; State v. Schuermann, 146 La. 110, 116, 83 So. 426; State v. Moreau, 153 La. 671, 96 So. 527; State ex rel. Wilkinson v. Hingle, 124 La. 655, 50 So. 616; State v. Williams, 35 La. Ann. 742; State ex rel. Williams v. Portsdorf, 33 La. Ann. 1411.
Since this position is considered vacant and the governor to date has not made an appointment, the previous commissioner who served prior to the appointment of Mr. Hubbard should remain as the commissioner as a "holdover", until a new appointee is properly inducted into office. LSA-R.S. 42:2 provides: "Every public officer in this state except in case of impeachment or suspension, shall continue to discharge the duties of his office until his successor is inducted into office." (See Opinion numbers 92-505)(a); 92-505(b); 96-196).
It is also the opinion of this office that the governor has the right to make the appointment of the parish appointee at any time in the future under the provisions of LSA-R.S. 34:2471(2)(a). There is nothing in the statute that sets a time period for the appointment by the governor provided under that section.
With regard to your question concerning the governor's appointment of someone other than Mr. Hubbard, it is the opinion of our office that should the governor appoint someone, that action would have the effect of replacing the former commissioner who remains in place as a "holdover" as previously discussed. Here again, there is nothing in the statute that provides for any other conditions in connection with the appointment.
Finally, you ask what legal process should be followed to insure that there is a legally appointed commissioner from the parish of St. John the Baptist. Again, we refer to the provisions of LSA-R.S. 34:2171(2)(a) which provides that should the parish president fail to make an appointment within sixty days of taking office, the commissioner from that parish shall be appointed by the governor. The statute does not list any other requirements.
I hope this information addresses your concerns. Should you have any further questions please do not hesitate to contact our office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ CHARLES H. BRAUD, JR. ASSISTANT ATTORNEY GENERAL