## The Citizens Bank *v.* Bry et al.

The statement of a notary of the city of New Orleans, made on a protest and certificate of notice, that a note was presented and payment demanded, and notice to the endorsers mailed, by V. D., "his lawful and duly sworn deputy," is sufficient evidence of the appointment and oath of the deputy, though the appointment and qualification of the deputy be expressly denied. No proof *aliunde* is required. Stat. 14 March, 1844. The stat. of 1844 authorizes a notary in New Orleans to act by deputy, and to certify to what is done by such deputy.

CITIZENS'
BANK.
v.
BRY.

The acts of an officer *de facto*, in actual exercise of the ordinary functions of his office, are valid as to third persons who may be interested in such acts.

The stat. of 14 March, 1844, authorizes notaries in the city of New Orleans to employ deputies to make presentments, and demands of payment, of bills and notes. The words of the statute—"in the making of protests," must be understood in an enlarged and popular sense, as comprehending whatever is necessary to the validity of a protest.

Where a deputy, appointed by a notary in the city of New Orleans, under the stat. of 14 March, 1844, makes demand of payment of a bill or note, it is not necessary that the deputy should certify the official act. The notary may certify the acts of his deputy, as well as his own.

APPEAL from the District Court of Ouachita, *Copley*, J. *Richardson* and *Sharp*, for the plaintiffs. *Garrett*, *McGuire* and *Ray*, for the appellants. The judgment of the court was pronounced by

SLIDELL, J. From a judgment against the endorsers of a promissory note, they have appealed. The correctness of the judgment depends upon the question, whether the demand, protest and notice have been proved by competent and sufficient evidence. To prove those facts, the plaintiffs offered a certified copies of the notarial protest and certificates of notice. These copies are signed by the notary, and bear his official seal. The protest states that, "I, *Charles Boudousquie*, notary, &c. &c., through *Victor Demouretti*, my lawful and duly sworn deputy, presented said note to, and demanded payment thereof from, the book-keeper of the Citizens' Bank of Louisiana, where the same is made payable, and was by him answered that no funds had been provided there to pay said note. Whereupon I, the said notary, did protest, &c. in the presence of, &c." The original is signed by two witnesses, by *V. Demouretti*, deputy, and by the notary. The record of notice is in like form, the notary certifying that the notice was mailed by the same deputy. It was signed by the witnesses, deputy, and notary.

The defendants objected to the introduction of this evidence upon various grounds, which will be noticed; and, as appears by the bill of exceptions, denied, when the protest was offered in evidence, that the deputy was a deputy legally appointed and sworn according to law.

The following points are now presented by the defendants:

"1st. There is no evidence, except the statement of the notary, that this person was his deputy, duly and legally appointed and sworn; and it was expressly denied that he was legally appointed and sworn according to law. Acts of 1844, p. 26. When the authority of a deputy is denied, it must be proved.

"2d. The act of 1844 does not authorize the deputy to make demand; it only authorizes him to assist " in the making of protests ;" and we are aided in ascertaining the meaning of the word " *making*" by reference to the french text, ' *la redaction des protêts*.'

"3d. If the deputy was authorized to make the demand, he should have made the protest and certified to his official act, and not the notary. Where the deputy acts he must certify for himself, and not his principal for him. The notary can only certify to his own official acts."

For the better consideration of these objections, a brief notice is necessary of the legislation on this subject, and the intention of the law-giver.

In aid of commerce the rules of evidence had been so far relaxed as to allow a protest of a foreign bill of exchange, apparently under the seal of a notary public, and made abroad, to prove itself, and establish the dishonor of the bill. But a notarial protest was not admitted even in the case of a foreign bill, where the protest was made in the country in which it was offered. See *Chesma* v.

*Noyes,* 4 Campbell, 129. As commerce increased in this country, and the great mass of mercantile transactions came to be represented by bills of exchange and promissory notes, many of the States of this Union, and our own among others, for the purpose of facilitating commerce by rendering the remedy upon bills and notes.convenient and safe, passed statutes clothing notaries public with authority to demand and give notices of protest, and making their notarial records of their acts, and certified copies of them, authentic evidence. With this intention, and to this effect, are the statutes of 1821 and 1827. But it was found that these statutes were sometimes inadequate to accomplish the end proposed. It became necessary to relieve notaries from the great pressure of business, which, at certain seasons of the year, takes place in a great commercial city, where the collection of mercantile paper is accomplished almost entirely through the agency of a few banks. To a bank's regularly employed notary, selected for his experience and fidelity, it would sometimes be a physical impossibility to demand and deliver notices in all cases personally. Hence, as we have no doubt, the statute of 1844 (Acts, p. 26) was enacted, which is in these words: " That it shall be lawful for each and every notary public in New Orleans to appoint one or more deputies to assist him in the making of protests, and delivery of notices of protests of bills of exchange and promissory notes; provided that each notary shall be personally responsible for the acts of each deputy employed by him; and provided that each deputy shall take an oath faithfully to perform his duties as such, before the judge of the parish in which he may be appointed, and provided the certificate of notice or protest shall state by whom made or served."

The former statutes were intended to establish a convenient and permanent means of proof. The statute of 1844 was not intended to impair the beneficial provisions of the antecedent laws; but, preserving them, to facilitate the notaries in the performance of their duties. This results not only from sound principles of interpretation, but from the terms of the statute. " The certificate of the notice of protest shall state by whom made or served." Why direct the notary as to the form of the certificate, if when made it would not be used ?

These views furnish an easy solution of nearly all the objections made by counsel, which we will now proceed to examine in their order.

I. If, when the notary has acted through a deputy, the creditor was bound, in addition to the authentic copy of the notarial record, to adduce proof *ali-unde* of the appointment and oath of the deputy, the statute would be made to defeat it on motive; and would be turned to the prejudice of the banks, (in whose welfare the State has a deep interest,) and of the commercial community, in whose favor it was made.

Again: the statute designates no particular manner or form for the appointment of the deputy, nor does it prescribe, *totidem verbis,* any particular mode of proving the fact. The appointing power is lodged in the notary, a public officer. We are bound to notice his, Boudousquie's, official character as an officer of the State, and his official certificate that *Demouretti* was his official deputy appears to us as clearly *primâ facie* evidence, especially when that certificate relates to acts performed, under the sanction of law, by the deputy upon the day of the certificate, and in the immediate gestion of the notary's duty, which is here brought into question. Besides, the statute itself not only authorizes the notary to act through a deputy, but expressly contemplates his authority to certify to what is done—" *shall state by whom made or served.*" In

stating that the deputy was employed to do the act, which the statute expressly authorizes, the notary has furnished authentic evidence that, on that day *Domourétti* was *de facto* his deputy; and even if he had not taken the oath prescribed by the statute, and if we are to regard him, as counsel seem to insist, in the light of a public officer, the objection is repelled by the well settled rule that, the acts of an officer *de facto*, thus having color of title, in the exercise of the ordinary functions of his office, are valid in respect to the rights of third persons, who may be interested in such acts. See *Bucknam* v. *Ruggles*, 15 Mass. 183. *Mason* v. *Dillingham*, Ib. 171. *McInstry* v. *Tanner*, 9 John. 135.

II. The second objection does not appear to have been made in the court below, and is not covered by the bill of exceptions. But, as the point has been fully argued at bar, we will express our opinion with regard to it. The language of the statute is—" to assist him in the making of protests." We have already considered the motive of the law, and the necessity which prompted its enactment. Every one knows that one of the most arduous duties of the notary is making the demand. The giving notices frequently involves only the labor of writing and addressing a notice, and dropping it into the post-office. The former duty is limited to the business hours of a single day; the latter may be done more at leisure, on the next day, or in time for the next post. The expression " making of protests," if restricted to the mere preparation of the notarial act of protest, would render the legislation, in that respect, idle and vain. For the notary had before the statute the right of employing as many clerks as he chose, to do the manual labor of writing the protest. The expression must be understood in its enlarged and popular sense, comprehending that which is requisite for the validity of a protest, to wit, a presentment and demand of payment. Again: that the deputy may be employed to make the demand, is evident from other expressions of the statute—" the certificate of notice *or protest* shall state by *whom made* or served." It would be unreasonable to sacrifice all other considerations to the language of the french text' " *la redaction des protéts.*"

III. If we were to construe the statute as requiring the deputy's certificate, and disallowing that of the notary, when the act was done by the deputy, the clear intention of the law giver already noticed would be defeated. Instead of the convenient mode of proof intended to be permitted in aid of commerce, the holder of commercial paper would be driven to the expense and delay of a commission enforcing the personal attendance of the deputy at the trial. Suppose this certificate of protest and notice had been presented under the signature of the deputy without the signature of the notary—the objection would have been made that, the court could not take judicial notice of the deputy's capacity. In point of fact, however, the objection is partially untenable on another ground. The deputy did sign the original protest and certificate of notice; and the notary certifies a copy of his official record, he being the proper person to do so.                    *Judgment affirmed.*