## No. 1183.

### THE STATE OF LOUISIANA VS. LOUIS BROOKS.

That the legality of an officer's appointment cannot be collaterally attacked has been so frequently decided, it cannot be regarded as an open question.

A defendant in a civil suit is not warranted in assuming that a person *acting* as an executive officer is a naked trespasser and on resisting a seizure of his property, if such person is armed with proper warrant for making such a seizure, and is acting in pursuance of an apparently legal appointment to such office.

Parol is not the best evidence of the contents of judicial records, suits and proceedings. Such records should be produced or their absence or loss accounted for. ·

The facts and details of a *civil* suit between accused and other parties is not competent evidence on a criminal trial.

A witness must state facts and leave the jury to draw their own inferences therefrom.

Proof of previous threats cannot be adduced by the accused, until it is first affirmatively shown that he was himself previously attacked or threatened with immediate danger by the deceased.

APPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais*, J.

*M. J. Cunningham*, Attorney General, and *James Wilkinson*, District Attorney, for the State, Appellee:

An overt attempt or act of violence by the deceased against the accused shortly before or at the time of the homicide, must be proved before evidence of prior quarrels, threats or of the dangerous character of the accused can be introduced. 35 Ann. 74; 36 Ann. 148; 36 Ann. 862; 37 Ann. 389; 37 Ann. 489; 37 Ann. 644; 37 Ann. 782; 37 Ann. 897; 37 Ann. 443; 38 Ann. 22, and other authorities.

The judge need only charge on questions of law which he deems applicable to the cause. R. S. sec. 89 1; 35 Ann 970; 37 Ann. 576, 464.

Where no constable has been elected, or where the constable has resigned and being *functus officio*, no constable has been appointed or elected to fill the vacancy, the justice of the peace has power to fill the vacancy by appointing a constable *pro tempore* until the Governor exercises his power to appoint a permanent or regular constable. R. S, etc, 637; C. P. art. 1158; Const. of 1879, art. 258.

The eligibility of an officer *de facto* cannot be questioned collaterally. R. S. sec. 2593; 21 Ann. 290; 21 Ann. 655; 21 Ann. 710; 26 Ann 272.

Where ministerial officers of a court are *de facto*, and actually acting as such, their failure to give bond does not deprive them of their official status. 13 Ann. 401; 13 Ann. 607; 2 Ann. 82; 31 Ann. 379.

Where a court is seized of jurisdiction *ratione materiæ* its process however erroneous is voidable, not void, and its orders must be respected. Holdane vs. Sumner, 15th Wallace, 601.

Witnesses who are not experts are not permitted to give their opinions on facts which they have testified to. 37 Ann. 270.

*R. T. Beauregard* and *Zacharie & Howard* for Defendant and Appellant:

The accused is always entitled to a reasonable time within which to procure counsel for his defense, and the counsel when so retained is entitled to a reasonable time within which to prepare the defense, regard being always had to the circumstances of the accused

52

State vs. Brooks.

and his counsel so to do. 38 Ann. 24; 16 Ann. 425; 26 Ann. 422; Whart. Am. Crim. Law, p. 941, note; 7 Bay, 1; Lord Kilmarnock's case, 2 Foster; Black. Rep., 514; Const. of 1879, art. 6.

The *recent* occurrence of a homicide, and the natural excitement of the community consequent thereon, is a good ground for a postponement and continuance, when the accused is brought to trial at the next term, immediately after the occurrence; 37 Ann. 457. not applicable here, as in that case the continuance was sought many months after the homicide. and did not and could not urge the recency. Bishop Crim. Proc., vol 1, § 951; Wharton's Am Crim. Law, p. 944, 3d; 9 Ga. 127; 5 Ga. 53; Jollyfer's case, 4 T. R 285; 32 Ga. 581; 14 Ga. 8; Thach. C. C.,'516; 2 Moody & R., 192; 26 Ga. 277; 18 Ga. 383; 7 Watts & Serg., 420.

The right of the trial judge to decide as to whether sufficient proof of an overt act has been educed to allow the admission of evidence of threats and character and homicide, is not an arbitrary one, but must be the exercise of a sound discretion, and is reviewable by the Supreme Court. 37 Ann. 461; 37 Ann. 645

It "is a rule that positive testimony on a given point must always predominate over negative testimony on the same point." 33 Ann. 800; 37 Ann. 258, Selfridge case.

What occurred at a homicide immediately after the firing is part of the *res gestæ*, as throwing light on what had just occurred. Wharton's Crim. Ev., § 262, *et seq.*; Selfridge case.

No man is bound to submit to the execution of a writ divesting him of his liberty or property issuing from a court without jurisdiction. Roscoe's Crim. Ev., p. 750; Wharton's Am. Crim. Law, p. 554; 3 Gillman, 336; Lieber's Civil Liberty and Govt, vol. 1, pp. 131. 134.

An officer is bound to inquire into the authority of the court from which the writ emanates, and is a trespasser if he executes a writ of a court without jurisdiction. 7 N. S 192; 8 R. 115; 3 Ann. 577; 9 Ann. 350.

One entering on an office, public or private, without proper authority, subjects himself to all the responsibilities, and cannot claim the benefit of the position he usurps. 4 N. S. 525.

A justice of the peace has no authority to appoint a constable *pro tem.* to a vacancy caused by resignation. Act of 1855, Cons. 1879.

A constable must reside in the ward in which he shall have been elected. (R. S., sec. 124.) He must give bond before entering on his duties. R. S. sec. 632.

In the trial for resisting of an officer, or killing of him, it is competent for the accused to show that the deceased was not a legal officer nor executing legal process. Wharton's Crim. Ev., § 883.

A *de facto* officer in civil cases is one who comes into office by color of right, and performs the duties of the office under a public acquiescence, but is not properly entitled to the office. He must be either appointed or elected by competent authority, or must have for some time acted as such and been publicly recognized. (Cooley on Taxation, p. 125; 13 S. and R., 208.) But this will only give a *prima facie* right, which may be questioned. Blackwell's Tax Titles, * 93; 1 Dill C. C. 268; 7 Jones N, C., 113; 73 N. C., 550; 37 Me., 428; 5 Wend, 234; 24 Wend., 539; 16 Wend.. 144; 60 Barbour, 248; 20 Gratt., 66; 33 Gratt., 513; 4 Vroom N. J., 201; 6 East, 368; 38 Conn., 476; 3 Bush., 17; 9 Nev., 334; 69 Ill., 529; 7 N. H., 113, 140; 56 Penn. St., 436; 29 Penn. St., 129; 1 Nev., 188; 45 Miss., 151; 16 Peters, 71; 3 Port, 334.

Nor do 1 Ann. 288; 12 Ann. 719; 21 Ann. 336; 25 Ann. 2; 27 Ann. 568; 32 Ann. 1234; 28 Ann. 82; 33 Ann. 1412, or 35 Ann. 521, militate against this doctrine in any degree,

"Where a trespasser goes with the intent to commit a felony, if necessary to accomplish the end intended, the owner of the property may repel force by force to the extent of killing the aggressor. Owner is not obliged to surrender possession, but may use as much force as necessary for its protection." 8 Cal., 34; Horrigan's Self-Defense, p. 900, and multitude of authorities there cited.

State vs. Brooks.

The opinion of the Court was delivered by

WATKINS, J. The accused was indicted for the murder of John Baptiste Allen, tried and convicted, and on appeal to this Court in New Orleans, the verdict and judgment were set aside and he was granted a new trial.

When the cause was, thereafter, called for trial in the court below, the district attorney announced that he should proceed against the accused, on said indictment, for *manslaughter* only; and, the trial being proceeded with, he was convicted of that crime and sentenced to fifteen years at hard labor in the penitentiary, and from that judgment and sentence he prosecutes this present appeal.

His demands for relief are based on several bills of exception taken to rulings of the trial judge rejecting proffered evidence and declining to give to the jury certain special charges, to be found in the transcript.

I.

The record discloses that the fatal rencontre was brought about by certain judicial proceedings had in the court of L. H. Holmes, justice of the peace, in the suit of C. Marrero vs. Louis Brooks (the accused), in which a writ of provisional seizure was issued, directing the seizure of the defendant's rice on the Sarah plantation, in satisfaction of the plaintiff's lien and privilege for the irrigation of defendant's land.

This writ was placed in the hands of the deceased, as the constable of his court, for execution; and he was proceeding to execute same by seizing the defendant's rice when met by his resistance, and from which the homicide resulted.

II.

The first bill was taken to the rejection of certain evidence to prove that the deceased did not reside in the same ward of the parish in which the justice of the peace exercised his official functions, and the consequent illegality of his appointment as special constable, vice R. Perez, who had resigned the office of constable, as a justification of his resistance of his attempted seizure of his rice.

This testimony was objected to upon the ground that the legality of his appointment could not be questioned, or attacked *collateraly*.

This objection was correctly sustained by the trial judge. It has so frequently passed under judicial investigation, and has been so often decided adversely to the pretentions of the accused, that it cannot be considered an open one. The deceased was regularly appointed, and was at the time, and had been for twenty days preceding, in the active discharge of the duties of that office. He was constable *de facto*, if not

*de jure*, and acting under color of title. His official acts were not absolute nullities, but entitled to the respect of and obedience from third persons. State vs. Gilbert, 10 Ann. 526; Citizens' Bank vs. Bey, 3 Ann. 633; State vs. Judge, 22 Ann. 33.

A *strong presentation of this doctrine is found in* State vs. Fenderson, 28 Ann. 82. The accused was indicted, tried and convicted of murder, and was sentenced to be hung. He complained that the persons styling themselves as grand jurors, and by whom said bill of indictment was found, were not grand jurors, and had no right or authority to indict him as they did, because the person by whom they had been organized and charged was not judge of the court, and that all proceedings had under said indictment were null and void. In that case the judge *acted* under an appointment *before* he had received a commission. The court declined to entertain the complaint of the accused.

In State vs. O'Grady, 31 Ann. 379, the court employed this forcible language:

"We do not desire to be understood, however, as intimating that a party charged with crime can be heard to raise an issue that the ministerial and other officers of court, actually and *de facto* acting as such, have no right to such offices. We should never get a criminal tried at that rate. He would commence with a kind of collateral *quo warranto* as to the judge and then go on down through the official roster of the court."

But the accused urges us to allow him to go to a much greater extreme, and sanction his resort to violence on, and the homicide of a person *acting* as constable, under the color of an appointment, and armed with a writ of provisional seizure, on the theory that such person was a naked trespasser, and his act in self-defense, or the defense of his property from spoliation. Though it was the act of a justice of the peace, and the legality of his appointment somewhat questionable, it was the duty of the accused to have respected the apparent authority of the appointee, and to have sought redress for his grievances in the constituted judicial tribunals. It was not proper that he should have taken the law into his own hands, or the risk of himself deciding the capacity of an officer.

III.

The *second* bill was taken to the judge's refusal to permit him to introduce *parol* evidence of the contents and purport of the judicial record of the suit and proceedings of Marrero vs. Brooks, in which the writ of provisional seizure was issued, and for the purpose of showing

the want of territorial jurisdiction of the justice of the peace. We are of the opinion that the judge correctly held that the records themselves were the *best* evidence and should have been introduced ; and, further, that it was not competent on a trial of the accused for manslaughter to inquire into the *particular facts* of the *civil* suit between Marrero and the accused, and which could have no material bearing on the homicide of the deceased.

### VI.

The *third* bill was taken to the judge's refusal to permit him to prove by the justice of the peace the character of the claim on which he issued the writ of provisional seizure. It was objected on like grounds as the evidence discussed in last bill, and the same ruling is applicable.

### V.

The *fourth* bill was taken to the judge's refusal to permit him to ask and have answered by a witness the following question, viz:

" What was the impression produced upon your mind as to his action and intention when the deceased threw up his right hand to his hip pocket ?"

The judge sustained the objection on the ground that a witness must state *facts*, and not the impressions they create on his mind; that it was the province of the jury to draw inferences from proven facts.

His ruling was strictly in conformity with that made by this court in the case of State vs. Parce, 37 Ann. 270, and in which there are cited various adjudicated cases.

### VI.

The *fifth* bill was reserved to the judge's refusal to permit him to make proof of previous threats made by the deceased, and subsequently communicated to the defendant.

The judge assigns the following reasons, viz: " That from the evidence, so far, there has been no proof of any · *overt act* of violence on the part of the deceased against the accused, immediately *preceding* the act " (of the latter).

He then quoted the purport of, and extracts from the testimony of the witnesses relied upon by the defendant as justifying the introduction of the rejected evidence. It clearly shows that the *slight* demonstration made by the deceased was *subsequent to defendant's first shot,* and while the deceased was *retreating* from the fray as rapidly as possible.

To entitle an accused person to introduce proof of *previous threats* made by the deceased against him, it *must* affirmatively appear that

immediately before, or at the time of the killing, the deceased had indicated his intention to execute same by some hostile demonstration State vs. Saunders, 37 Ann. 389; State vs. Labuzan, 37 Ann. 489; State vs. Janvier, 37 Ann. 644; State vs. Kerwin, 37 Ann. 782; State vs. Jackson, 37 Ann. 896; State vs. Spell, 38 Ann. 22.

## VII.

The *sixth* bill was reserved to the refusal of the trial judge to give certain special instructions in charge to the jury. They were:

1. That a justice of the peace is without jurisdiction to issue a writ of provisional seizure on a rice crop on another piece of land than that on which the rice flume is located; and he cannot, in such case, entertain a suit against a person who does not reside within his jurisdiction.

2. A justice of the peace has no right to appoint a constable *pro tempore* to fill a vacancy caused by a resignation of a prior incumbent.

3. No one can be appointed constable other than a resident of the ward in which it is made.

4. Before *acting* as constable an appointee must give bond.

5. "If one *thus* appointed presumes to *act*, he is a trespasser; and, if he goes armed to meet resistance to the trespass, he commits a felony."

6. A person who has not given bond, nor complied with the law in other respects, has *no color* of title.

The judge declined to give in charge to the jury these instructions, principally on the grounds that are assigned in the *first* bill of exceptions. and on the further ground that if a justice of the peace has jurisdiction to cause the seizure of property situated within his ward, although the defendant and owner reside out of it, he has authority to appoint a constable *pro tempore* to serve the process of his court, when there shall be no such officer elected or appointed.

This ruling is supported by good authority. The law authorizes a writ of provisional seizure or sequestration to issue against a property that is affected with a privilege, or right of pledge, either within the jurisdiction where the property is situated or where the debtor resides. Voorhies, Rev. C. P. 163; Act 64 of 1876.

The Code of Practice distinctly provides that (the) "justices of the State, without the limits of New Orleans, *shall have power to appoint constables pro tempore whenever* there shall be no such officer elected for their respective districts in the manner directed by law." C. P. 1158; R. S. 637.

From the evidence it appears that the incumbent had resigned, and no successor had been elected or appointed by the Governor in his place.

This seems to have been just such a situation of affairs as was in the contemplation of the framers of the code, and the act of the justice of the peace, in making the appointment of the deceased, was apparently justifiable, and binding on all third persons, including the accused, until set aside in the manner provided by law.

The proof shows that the appointment was evidenced in writing, and made some days antecedent to the homicide. The judge's ruling was undoubtedly correct.

## VIII.

The defendant applied for a new trial on the ground that one of the *petit* jurors had been guilty of misconduct. But inasmuch as no bill was reserved to its refusal by the trial judge, it cannot receive any consideration by us. State vs. Redwine, 37 Ann. 780, and authorities cited.

The objections made are not sustained.

Judgment affirmed.