(96 South. 127)

No. 25753.

STATE v. SMITH et al.

(Feb. 26, 1923.   Rehearing Denied, April 2, 1923.)

(Syllabus by Editorial Staff.)

1. Grand jury ☞5—Writing of wrong name in indictment held not to disqualify person whose name was written.

Where indictment was found against T. R. Y., but by inadvertence the name was written as J. R. Y., a person having the latter name was not thereby disqualified from serving on the grand jury.

153 LA.—19

2. Jury ☞59(½)—Position of commissioner is public office.

The position of jury commissioner is a public office.

3. Clerks of courts ☞6—Position of chief deputy is public office.

Position of chief deputy clerk of court is a public office, as holder of the position is intrusted with exercise of some of the powers of government.

4. Jury ☞59(2)—One in possession of office of chief deputy clerk of court is such de facto, and jury commissioner de facto when clerk unable to act.

One appointed chief deputy clerk of court, and in actual possession of the office, discharging its duties under color of right, was chief deputy clerk de facto and ex officio jury commissioner de facto under Act No. 135 of 1898, § 3, when clerk was unable to act, though he had not resided in the parish the required time.

5. Officers ☞104—Acts of de facto officer cannot be collaterally attacked.

As a general rule, acts of officer de facto cannot be attacked by collaterally bringing into question his title to the office.

6. Indictment and information ☞137(2)—Indictment cannot be quashed upon collateral attack on de facto commissioner's title to office.

Indictment cannot be quashed by collateral attack on title to office of de facto jury commissioner who participated in selection of venire of grand jurors.

7. Grand jury ☞7—Oath of office as chief deputy clerk is sufficient oath as ex officio jury commissioner.

Oath of office of chief deputy clerk of court was a sufficient oath of office as ex officio jury commissioner under Act No. 135 of 1898, in absence of clerk.

Appeal from Fourth Judicial District Court, Parish of Lincoln; J. B. Crow, Judge.

Orville Smith and others were indicted for the unlawful possession of liquor, and the defendant named was convicted, and appeals. Affirmed.

Walter E. McBride, of Ruston, for appellant.

A. V. Coco, Atty. Gen., and S. L. Digby, Dist. Atty., of Farmerville (T. S. Walmsley, of New Orleans, of counsel), for the State.

OVERTON, J. Defendant was tried on a bill of indictment charging him with having possessed, in violation of law, spirituous and intoxicating liquor for beverage purposes, was found guilty, and was sentenced to pay a fine of $500, to be imprisoned in the parish jail for a period of 30 days, and in default of paying the fine and costs to be imprisoned for 5 months additional.

[1] Prior to arraignment, defendant filed a motion to quash the indictment on two grounds. The first of these is that, at the time of the impaneling of the grand jury, J. R. Younse, who was sworn as a member thereof, was under indictment for violating an ordinance of the police jury making it an offense to permit one's live stock to run at large.

When the grand jury was impaneled, and also at the time that the bill, in this case, was returned, there was an indictment on file in the district court for Lincoln parish, purporting to charge J. R. Younse with that offense. However, the evidence, on the trial of the motion to quash, fully establishes that the grand jury did not find a true bill against J. R. Younse for that offense, but found one against T. R. Younse, another person, and that the district attorney, inadvertently, in drawing the indictment, wrote the initial "J" for "T." Under these circumstances, there was not, in fact, an indictment or charge against J. R. Younse, but only that which purported to be one. Hence, granting that the offense is one which disqualifies a grand juror to serve, still, the court properly overruled that ground of the motion.

The second ground of the motion is, that D. E. Moore, who acted as one of the jury commissioners who drew the grand jury that indicted defendant, did not possess the qualifications which the law requires of a jury commissioner.

The record discloses that Moore was appointed chief deputy clerk by the clerk of court; that the appointment was approved by the district judge; that he took the required oath as chief deputy clerk, and assumed the duties of his office; that, at the time of his appointment, he had resided in the parish for which the appointment was made, for only three days, and that, five months thereafter, while the clerk of court was absent from the parish, on a leave of absence granted by the Governor, Moore, by virtue of his office as chief deputy clerk, took the place of the clerk of court, as an ex officio member of the jury commission, in selecting the panel of grand jurors from which the grand jury was drawn that returned the indictment.

As Moore had not resided in the parish for one year prior to his appointment as chief deputy, it is contended that his participation in the proceedings of that commission is sufficient to nullify them, and that a bill of indictment, returned by a grand jury thus selected is invalid, and should be quashed.

The law provides that the several district judges throughout the state shall appoint, as jury commissioners, five good and discreet citizens, who are able to read and write the English language. It further provides that the five so appointed shall constitute, with the clerk of court, the jury commission for the parish. It also provides that, if, for any cause, the clerk of court is unable to act, then his chief deputy shall act in his place. Section 3, Act 135 of 1898.

[2, 3] The position of jury commissioner is a public office. State v. McClendon, 118 La. 792, 43 South. 417; State v. Joseph, 143 La. 428, 78 South. 663, L. R. A. 1918E, 1062. So, also, is the position of chief deputy clerk of court; for one holding that position is intrusted by the sovereign with the exercise of some of the powers of government, of a permanent nature, and his being so intrusted makes him an officer. 29 Cyc. 1361 to 1365.

[4] Moore was unquestionably chief deputy clerk de facto, for he was in the actual possession of the office, discharging its duties, under color of right, and as such he was ex

officio a jury commissioner de facto, whenever the clerk was unable to act.

[5, 6] It is a rule that the acts of an officer de facto cannot be attacked by collaterally bringing into question his title to office. The rule has been applied in this state to the acts of judges, clerks, sheriffs, and notaries. New Orleans Canal & Banking Co. v. Tanner, 26 La. Ann. 273; State v. Gilbert, 10 La. Ann. 524; Citizens' Bank v. Bry, 3 La. Ann. 630; State v. O'Grady, 31 La. Ann. 378; State v. Brooks, 39 La. Ann. 817, 2 South. 498; State v. Sadler, 51 La. Ann. 1397, 26 South. 390. However, while the rule has been applied to the acts of the officials mentioned, yet it has not been extended to jury commissioners, but, to the contrary, it has frequently been held that a bill of indictment may be quashed upon motion of an accused, when returned by a grand jury, drawn from a panel selected by jury commissioners, one of whom was not a commissioner de jure, though the facts showed that he was one de facto. State v. Newhouse, 29 La. Ann. 824; State v. Hinson & Martin, 42 La. Ann. 941, 8 South. 471; State v. Flint, 52 La. Ann. 62, 26 South. 913.

In principle the cases last cited seem to be in conflict with those cited immediately before. In other words, it seems inconsistent to hold that the acts of a clerk, sheriff, or judge cannot be questioned on the ground that those officials are not de jure such, when it appears that they are officers de facto, and to hold otherwise as to the proceedings of jury commissioners. Why, for instance, should it be held that a citation issued by a clerk de facto cannot be annulled on the ground that he was not clerk de jure (New Orleans Canal & Banking Co. v. Tanner, cited supra), or that the act of a sheriff de facto, in selecting and summoning jurors (State v. Ferray, 22 La. Ann. 423), or of a judge in trying a criminal case, and perhaps in appointing the very commissioners who selected the venire of grand jurors from which was drawn the grand jury that returned the indictment (State v. Sadler, supra), is free from attack upon such ground, and yet that the proceedings of a jury commission are not? The same reasons of public policy that require the application of the rule that the acts of clerks, sheriffs, and judges are free from such attack would seem to require its application to the proceedings of jury commissioners, unless strong reasons to the contrary appear.

The principle that the acts of an officer de facto are valid as to third persons and the public, and cannot be attacked on the ground that he is not also an officer de jure, "is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice." 22 R. C. L. § 324; State v. Sadler, 51 La. Ann. 1397, 26 South. 390. In the Sadler Case the court said, quoting from Brown v. Lunt, 37 Me. 423, that—

"The distinction between officers de facto, acting colore officii, and officers de jure, has been recognized in England from an early period, and seems to have been applied to officers of every grade, from the king to the lowest incumbent of office. [Citing numerous cases.] Without further reference to cases," say the court, "it will be found that the distinction stated is fully sustained by those already cited, and that it applies to all public officers, judicial or ministerial, whether claiming by election or appointment, or whether holding under a defective title, within the term, or in possession and exercising the office under color of right beyond the term, affixed to it by law."

In the Sadler Case, however, which involved the validity of the proceedings of a judge of the criminal district court of the parish of Orleans, in a murder case, in which it was contended that the proceedings were invalid, because the judge was not one de jure, as he had forfeited his office by accepting another, the court, in announcing the above doctrine with respect to collateral attack, found it necessary to state, in effect,

that the jurisprudence of this state made an exception as to the office of jury commissioner. After citing some of the cases, in which attacks were upheld, as to the proceedings of such commissioners, on the ground that one of them was not a commissioner de jure, the court said:

"An examination of those decisions will show that the court dealt with ministerial officers, whose duties were immediately and alone connected with the drawing of grand juries, and with the regularity of whose proceedings, and the validity of whose acts, parties indicted were directly interested. The objections there urged went to the competency of the grand juries to find and return indictments into court, and which findings constituted the foundation of the prosecutions against the parties complaining of them."

The cases referred to as upholding the right to make a collateral attack do not state the reasons for so holding, though they apparently assume that such right exists. However, the reason given, in the above quotation, is doubtless the one setting forth the principle upon which those cases rest. Learned counsel for the accused quotes the above excerpt in his brief: and, as the trial judge overruled the motion to quash, in so far as it is based on the ground now under consideration, because the attack was collateral, counsel relies on the quotation to maintain his position that the attack may be collateral.

However, in so far as the Sadler Case rests the reason, which it assigns, on the ground that jury commissioners are ministerial officers, it may be said that the rule as to the acts of de facto officers applies as well to ministerial as it does to judicial or executive officers. New Orleans Canal & Banking Co. v. Tanner, 26 La. Ann. 273, and Citizens' Bank v. Bry, 3 La. Ann. 630, both cited supra. In so far as the reason rests on the ground that such commissioners have to do only with the drawing of juries, that fact merely affects the scope of their duties, which should not affect the question. In so far as the reason rests on the ground that a defective title to office of such commissioners goes to the competency of jurors, and hence to the validity of the indictment, this can be said only when the rule as to de facto officers is not applied.

Counsel for defendant also argues that a jury commission "illegally constituted is a jurisdictional matter affecting the legal composition, existence, and power of the tribunal before which the complaint is prosecuted," and cites, in support of his position, State v. Bain, 135 La. 776, 66 South. 196, from which the above quotation is taken. It may be said in reply that, as to whether a jury commissioner possesses the qualifications required by law, or as to whether he has taken the necessary oath, and therefore that the jury commission is illegally constituted, are matters that cannot be inquired into collaterally, but only in a direct action brought against such commissioner, or one acting as such by virtue of his office, as clerk or chief deputy clerk, when it appears that he is actually in possession of the office under color of right. Until the question of his right to hold the office is contradictorily determined, it cannot be said that the jury commission is illegally constituted. To determine the question collaterally is virtually to deprive the commissioner of his office without a hearing by destroying the efficacy of his official acts.

In concluding this phase of the case, in so far as we have been able to ascertain, it may be said that in other jurisdictions, where jury commissioners are used to draw juries, the proceedings of a jury commission cannot be overthrown by bringing into question collaterally the title of one of the commissioners to his office. Cyc. states the rule as follows:

"The selection of a jury list by a de facto jury commissioner is as regular as a selection by a commissioner de jure, and is no ground for a challenge to the array. It is not competent in this collateral manner to question the commissioner's title to his office, or the validity of.

the law under which he was appointed." 24 Cyc. 213.

To the same effect, see Thompson & Merriam on Juries, § 138, p. 114.

Our conclusions are that an indictment cannot be quashed by a collateral attack on the title to office of one of the commissioners who participated in the selection of the venire of grand jurors from which was drawn the grand jury that returned the bill, and that the cases of State v. Hinson & Martin, 42 La. Ann. 941, 8 South. 471 and State v. Flint, 52 La. Ann. 62, 26 South. 913, and such other cases as support the contrary view, should be and are now overruled in so far as they support that view.

[7] It is also urged that the indictment should be quashed on the ground that the jury commission was incompetent to select a venire of grand jurors because Moore had not taken the special oath as jury commissioner required by Act 135 of 1898. This ground of attack is included in our ruling made above. Moreover, even were we to consider it, we should feel constrained to hold that his oath as chief deputy clerk was sufficient. State v. Starr, 52 La. Ann. 610, 26 South. 998; State v. Bradley, 120 La. 248, 45 South. 120.

For the reasons assigned, the judgment appealed from is affirmed.