WEIMER, J.,
dissenting.
IU am compelled to dissent. In this instance, what compels this dissent are the clauses prohibiting double jeopardy contained in our most fundamental laws, the United States Constitution and the Louisiana Constitution.[1] These double jeopardy clauses serve, in part, to protect a citizen from being tried twice for the same offense.
The majority of this court mixes an analysis of the authority of courts under state law with an analysis of the protections of the federal Constitution and concludes that the federal protections against double jeopardy do not apply to the defendant. The reason the majority cites for allowing the defendant to be tried twice for the same crime is that, after reviewing a number of cases in which the question of a defendant’s Uguilt was actually posed to a .jury, the majority labels the trial court’s acquittal of the defendant as “without legal authority.” State v. Davenport, 13-1859, pp. 20-22 (La.5/7/14), 147 So.3d 137, 150, 2014 WL 1847820.
Notwithstanding this label, the United States Supreme Court has squarely addressed the type of action taken by the trial court here and concluded the protections of the federal Double Jeopardy Clause apply. In Evans v. Michigan, — U.S. —, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013), the Court affirmed a half century of jurisprudence holding at its core that “the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if *154 the acquittal is ‘based upon an egregiously erroneous foundation.’ ” Id. at 1074, quoting Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (emphasis added). The Court further ruled: “[a] mistaken acquittal is an acquittal nonetheless, and ... ‘[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.’ ” Evans, 133 S.Ct. at 1074, quoting United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).
The Court “emphasized that labels do not control our analysis,” and no fewer than eight times in Evans did the Court iterate or reiterate that an acquittal is any ruling by which a court determines the state’s proof is “insufficient” to sustain a conviction. Id., 133 S.Ct. at 1075-78. Even though the trial court here found the evidence insufficient when ruling “the State has not proven” all elements of the alleged crime, a majority of this court attempts to remove the trial court’s acquittal from the reach of Evans by pointing to the following comment:
Finally, the State and the United States object that this rule denies the prosecution a full and fair opportunity to present its evidence to the jury, while the defendant reaps a “windfall” from the trial court’s unreviewable error.... But sovereigns are hardly powerless to prevent this sort of situation.... Nothing obligates a jurisdiction to afford its trial lacourts the power to grant a mid-trial acquittal, and at least two States disallow the practice. See Nev.Rev.Stat. § 175.381(1) (2011); State v. Parfait, 96-1814 (La.App. 1 Cir. 05/09/97), 693 So.2d 1232,1242....
Evans, 133 S.Ct. at 1081. The comment just quoted does not bear the weight of the majority’s attempted use of it. Importantly, the Evans Court recognized what the majority here does not: legislative efforts can be made to “prevent” a trial court from erroneously granting a mid-trial acquittal (See Id.), but nothing can eliminate the possibility of such an error. Indeed, the Evans Court remarked: “We presume here, as in other contexts, that courts exercise their duties in good faith.” However, “[i]f the concern is that there is no limit to the magnitude of the error that could yield an acquittal, the response is that we have long held as much.” Id. at 1078-79 (emphasis added).
At the risk of stating the obvious, because there is “no limit to the magnitude of the error that could yield an acquittal,” (Id.) and because federal law is supreme, although our state legislature explicitly prohibited a mid-trial acquittal in a jury case, the protections of federal law must be observed even if a district court contravenes state law or exceeds its own authority under state law. More specifically, because the federal Double Jeopardy Clause has been made applicable to the states, the protections afforded by that Clause can only be said to exist if those protections are triggered in the event “prevention]” has failed to stop an error. See Id. at 1081; see also Benton v. Maryland, 395 U.S. 784, 795, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (ruling the federal Double Jeopardy Clause is applicable to the states, the Court explained: “Once it is decided that a particular Bill of Rights guarantee is fundamental to the American scheme of justice, the same constitutional standards apply against both the State and Federal Governments.”) (internal quotations and citation omitted).
l4Here, the trial court committed an error during a jury trial by granting an acquittal before the case went to the jury. The trial court granted the acquittal because it found the state failed to produce *155 any proof on an essential element of aggravated rape — in this instance, a victim’s 1.Q. being “seventy or lower.” See La. R.S. 14:42(0(2). The trial court explained that the state had used the victim’s performance in school to establish her vulnerability in this regard, but “in fact the witness testified that Louisiana schools do not conduct an IQ test.” Having granted the acquittal, the trial court dismissed the jury.[2]
As the majority recounts, the trial court later realized that it acted in error when granting the acquittal. Having dismissed the jury, the trial court attempted to undo the error with the following decree: “I ... made an erroneous ruling in [the] jury trial regarding this case so I’m declaring a mistrial.”
The majority of this court seeks to sidestep the acquittal and make the later mistrial the focal point by characterizing the issue presented as “whether mistrial was validly ordered by the trial judge.” Even so, the majority does not dispute the state failed to satisfy its burden of proof and does recognize that the effect of the acquittal truly is “the underlying issue.” State v. Davenport, 13-1859, p. 6 (La.5/7/14), 147 So.3d 137, 141, 2014 WL 1847820.
A proper analysis of this “underlying issue” avoids the numerous pages the majority devotes to analyzing whether the trial judge was authorized under state law to grant an acquittal. As the Double Jeopardy Clause is contained in the Fifth | ^Amendment, the only pertinent question regarding the trial judge is whether the judge was a “state actor,” when he granted the acquittal and removed from the jury the task of ascertaining any guilt. See, e.g., J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 130-31, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (finding gender-based peremptory strikes of potential jurors triggered Fifth Amendment protection because the strikes were made by the prosecutor, who was a “state actor[ ]” within the criminal justice system).
The question of whether the trial judge is a “state actor” for purposes of triggering the protections of the Fifth Amendment is easily answered in the affirmative. Indeed, it is undisputed that a duly elected trial judge empaneled a jury and, after evaluating the state’s case and rendering an acquittal, he discharged the jury. In discharging the jury before deliberations, the trial judge thereby removed from the jury the task of ascertaining any guilt. All of these undisputed facts are indicia of the trial judge being a “state actor,” for purposes of triggering the federal constitutional protections against double jeopardy. See Id.[3]
The question of the trial judge’s authority to render the acquittal, while immaterial under a federal constitutional analysis, is conceivably germane to an analysis of whether Louisiana’s protections against double jeopardy might also apply. The *156 majority’s analysis, however, widely misses the mark. The first group of cases the majority relies upon are civil, therefore, those cases have no bearing whatsoever on criminal double jeopardy.[4] In the next group of cases, trial courts actually put the | (¡question of the defendant’s guilt to the jury and, in all but one of these cases, the jury rendered a verdict of guilty.[5] Although there was some error in each guilty verdict, the error was the jury’s; the question of the judge’s authority was simply never presented. These cases, therefore, add nothing toward resolving the state law “authority” question on which the majority so intently focuses.
In contrast to the inapposite authorities cited by the majority, I note that the trial court stood empowered by both statutory and constitutional authorities to render an acquittal — even in error. Specifically and undeniably, the trial court had jurisdiction over this case. See La.C.Cr.P. art. 16 (“Courts have the jurisdiction and powers over criminal proceedings that are conferred upon them by the constitution and statutes of this state, except as their statutory jurisdiction and powers are restricted, enlarged, or modified by the provisions of this Code.”). The Louisiana Constitution vests district courts with broad authority, including “original jurisdiction of all civil and criminal matters,” (Article V, § 16(1)) and the power to execute “all ... orders, and process in aid of the jurisdiction of [the] court” (Article V, § 2). Next, I note that there is a long line of jurisprudence from this court upholding the actions of trial judges when, as here, their courts have jurisdiction:
Our jurisprudence is of long standing, and has consistently been followed, that a judge acting under color of right has the authority, capacity and right to perform his judicial duties; that such capacity cannot be challenged collaterally (State v. Lewis, 22 La.Ann. 33 (1870); State v. Williams, 35 La.Ann. 742 (1883)); that the acts of a de facto judge, even if he is not de jure, are valid and binding (State v. Sanderson, 169 La. 55, 124 So. 143 (1929); State v. Cullens, 186 [168] La. 976, 123 So. 645 (1929); State v. Phillips, 164 La. [597], 114 So. 171 Ji(1927); State v. Smith, 153 La. 577, 96 So. 127 (1923); Guilbeau v. Cormier, 32 La.Ann. 930 (1880); New Orleans Canal and Banking Co. v. Tanner, 26 La.Ann. 273 (1874))....
City of Baton Rouge v. Cooley, 418 So.2d 1321,1323 (La.1982) (emphasis added).
In the instant case, the authority of the trial judge under Louisiana law, which is only conceivably relevant to whether Louisiana’s double jeopardy protections apply is, therefore, clearly established. Thus, in addition to being protected by the federal Constitution, the defendant here is protected against double jeopardy under the Louisiana Constitution because the remaining thresholds for those protections were triggered.
*157 The most basic threshold, the majority correctly concedes, is “findfing] jeopardy attached in Davenport’s trial.” Davenport, 13-1859 at 22, 147 So.3d at 151. It is also undisputed that the trial judge reviewed the state’s evidence and found the evidence insufficient to convict Mr. Davenport of aggravated rape. See Davenport, 13-1859 at 2, 147 So.3d at 138-39. Therefore, and satisfying the next important threshold for triggering protection, the trial judge granted an acquittal for purposes of the constitutional guarantees against double jeopardy. As the Supreme Court recently explained, the jurisprudence has “defined an acquittal to encompass any ruling that the prosecution’s proof is insufficient to establish criminal liability for an offense.” Evans, 133 S.Ct. at 1074-75.
After granting the acquittal, the trial judge later realized that he took the case from the jury too early and, in so doing, he committed an error. However, as the Supreme Court emphasized, “[t]o permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant lsso that ‘even though innocent he may be found guilty.’ ” Evans, 133 S.Ct. at 1075, quoting United States v. Scott, 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).
Thus, the majority of this court errs in giving effect to the later declaration of mistrial. Although a mistrial declaration would otherwise allow a retrial, retrying the defendant for aggravated rape would violate the guarantee against double jeopardy because, as Evans makes clear, the earlier acquittal was already effective for purposes of the federal Double Jeopardy Clause.
The erroneous aspects of the trial court’s acquittal are noteworthy for several reasons, yet none of them can avoid the sweep of federal law. First, as the majority of this court acknowledges, the essence of the error in the acquittal lay in its timing. See Davenport, 13-1859 at 13,147 So.3d at 145-46, citing La.C.Cr.P. art. 821. Unlike federal criminal procedure, the majority notes, Louisiana criminal procedure does not expressly authorize a judge to order an acquittal until after the case has been sent to the jury. See Id., 13-1859 at 10, 147 So.3d at 143-44, citing La.C.Cr.P. art. 821. Therefore, rather than being a nullity, the error was akin to being a harmless error because the error would not have changed the outcome. That is, had the judge merely waited to see if the jury returned a guilty verdict on the aggravated rape charge, he could have then granted the acquittal with express statutory authority. See La.C.Cr.P. art. 821.[6]
lflThe Evans Court considered the possibility that a judge would act prematurely. For purposes of the protection against double jeopardy, the Court stated it is an “unavoidable” conclusion that a premature acquittal is nevertheless an “acquittal.” *158 See Evans, 133 S.Ct. at 1080-81. The Court explained: “It should make no difference whether the court employs the formality of directing the jury to return an acquittal or whether the court enters an acquittal itself.... If a trial court makes an antecedent legal error ..., and then grants a judgment of acquittal rather than directing the jury to acquit ..., the result is an acquittal all the same.” Id. at 1080-81. Here, the antecedent legal error was accepting the defense’s mistaken belief that an acquittal in a jury case is governed by La.C.Cr.P. art. 778.[7] The defense specifically invoked Article 778 when moving for an acquittal. In this mistake, the prosecution was hardly blameless because even though the prosecution opposed the motion, the prosecution failed to point out that Article 778 is directed to bench trials. Furthermore, when objecting to the result, which was the trial judge’s announcement of a judgment of acquittal and that he would dismiss the jury, the prosecution still failed to identify that Article 778 provided no direct support for the acquittal.[8] Again, Evans squarely addresses this situation. To the extent the defense prompted the error, the Evans Court has rejected the argument that a defendant forfeits the protections against double jeopardy as a consequence of provoking an erroneous acquittal:
| m[T]he State suggests that because Evans induced the trial court’s error, he should not be heard to complain when that error is corrected and the State wishes to retry him.... But we have recognized that “most [judgments of acquittal] result from defense motions,” so “[t]o hold that a defendant waives his double jeopardy protection whenever a trial court error in his favor on a midtrial motion leads to an acquittal would undercut the adversary assumption on which our system of criminal justice rests, and would vitiate one of the fundamental rights established by the Fifth Amendment.”
Evans, 133 S.Ct. at 1079, quoting Sanabria v. United States, 437 U.S. 54, 78, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).
Another aspect of the acquittal brings it even further into the sweep of federal constitutional law. The majority concedes that the trial court would have acted with explicit statutory authority in granting an acquittal if Mr. Davenport had chosen a bench trial. Davenport, 13-1859 at 12-13, 147 So.3d at 144-46, citing La.C.Cr.P. art. 778. However, Mr. Davenport chose a jury trial. Thus, when giving effect to the trial court’s later declaration of mistrial instead of the acquittal, as did the trial court and as the majority of this court now does, Mr. Davenport has essentially been penalized for exercising his right to a jury trial. The Supreme Court has ruled a defendant cannot be penalized for exercising the right to a jury trial. See United States v. Jackson, 390 U.S. 570, 582-83, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).
*159 Subjecting a citizen to repeated prosecution for the same offense for which he has been acquitted is undeniably a penalty. By placing the Double Jeopardy Clause in the Bill of Rights in the United States Constitution, our nation’s Founding Fathers chose to protect citizens from the government repeatedly bringing the same criminal charges against them.[9] Similarly, the redactors of the Louisiana Constitution placed |na double jeopardy clause within our state’s Declaration of Rights. These clauses operate as a check on the power of government, with its vast resources, to prevent the abuse of trying and retrying a citizen over and over again so as to secure a different result. We must bear in mind, as did this nation’s Founding Fathers, that absent a conviction, an individual is merely an accused and is legally presumed to be innocent. As the United States Supreme Court has explained, the presumption of innocence and the protection from vexatious re-prosecution are main rationales for protecting citizens from double jeopardy:
The constitutional prohibition against “double jeopardy” was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).
Although the majority gives it scant mention, because Louisiana’s Constitution contains the most recent relevant statement by an electorate within a long tradition of protecting against government overreaching, the effect of the trial court’s acquittal against Louisiana’s protections from double jeopardy has not been considered by the majority. In La. Const, art. I, § 15, the following guarantee is described: “No person shall be twice placed in jeopardy for the same offense.” There are three very specific exceptions to double jeopardy contained in Article I, § 15, namely: when a defendant makes an “application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained.”
| i2The majority’s finding “the trial judge’s directed verdict of acquittal in Davenport’s trial was unauthorized, invalid and illegal” fits none of the three exceptions contained in La. Const, art. I, § 15. Assuming for the sake of argument the trial court’s action was a “verdict of acquittal,” which the majority elsewhere describes — more accurately — as an “order” or a “ruling” (Davenport, 13-1859 at 2, 11, 147 So.3d at 138-39,144),[10] that “verdict of *160 acquittal” is clearly not an “application for a new trial” because the defendant asked to be completely absolved from prosecution, not to be subjected to another trial. Just as obvious, the acquittal rendered on November 28, 2012, was not a declaration of “mistrial,” else the trial court would have felt no need on December 4, 2012, to attempt to declare a mistrial. Finally, the acquittal was not a judgment sustaining “a motion in arrest of judgment” because there was no existing judgment of guilt. Subjecting the defendant again to jeopardy for the same criminal charge, as the majority does, thus violates the plain language of Article I, § 15.
In conclusion, this ease is not res nova as the majority posits, but instead represents the quintessential justification for not allowing a citizen to be retried for the same offense. The trial court found the state marshaled insufficient evidence on an essential element of the charged offense. The majority does not dispute that the state failed to produce evidence required to show the victim had an I.Q. of “seventy or lower” as required to convict under La. R.S. 14:42(C)(2). Because this was a jury trial, the procedure described by La. C.Cr.P. art. 821 called for the trial court to wait until the jury had rendered its verdict and, if the jury returned a guilty verdict for the |13crime of aggravated rape, the trial court could then have granted a judgment of acquittal. The trial judge did not follow this procedure. Even so, the trial judge was a state actor for purposes of federal constitutional protections and the Supreme Court’s very recent pronouncement in Evans establishes that, because the trial judge found the evidence insufficient, the defendant here is entitled to protection against double jeopardy. Similarly, the protections against double jeopardy contained in the Louisiana Constitution were triggered by the trial court’s judgment of acquittal. The defendant cannot, as the trial court and the majority of this court have now held, be constitutionally subjected to another prosecution for the same alleged aggravated rape. Thus, I respectfully dissent.

. See U.S. Const. Amend. V, which provides: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. [Emphasis added.] See also La. Const, art. I, § 15, which provides: Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury. No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained. [Emphasis added.]

. Although the trial court committed a procedural error, it unmistakably evaluated the evidence and found it lacking. The trial court’s assessment of what the situation required, announced in open court, is worth noting as an example of having the courage of one's convictions: "And I take the law as I find it. It may not be what I want to do but it is what I, in my opinion, have to do.” From that same sentiment, it is understandable that the trial court wanted to correct itself, once it realized it had acquitted in error.

. Just as the prosecutor in J.E.B. was a "state actor” because, among other actions, the prosecutor wielded the state’s executive power when exercising peremptory challenges, it logically follows that the trial judge in the instant case was a state actor, because the judge wielded judicial power on behalf of the state of Louisiana.

. The first group of cases with which the majority leads its "Analysis” section comprises civil cases, such as Succession of Jenkins, 230 La. 367, 88 So.2d 659 (1956), Beene v. Pardue, 226 La. 606, 76 So.2d 902 (1954), and llardo v. Agurs, 226 La. 613, 76 So.2d 904 (1954). See Davenport, 13-1859 at 20, 147 So.3d at 150.

. In State v. Campbell, 95-1409 (La.3/22/96), 670 So.2d 1212, State v. Goodley, 423 So.2d 648 (La.1982), State v. Cook, 396 So.2d 1258 (La.1981), and State v. Egena, 347 So.2d 1106 (La. 1977), juries actually rendered guilty verdicts, not acquittals, that this court ruled were flawed. Only in State v. Givens, 403 So.2d 65 (La.1981), did the jury not render a guilty verdict; in Givens, the district court ordered a mistrial, but after the jury deadlocked. See Davenport, 13-1859 at 20-21, 147 So.3d at 150-51.

. There seems to be some inconsistency in the majority opinion, which states, on the one hand, that ‘‘[tjhis is not a question of a trial judge acting prematurely on a motion he would otherwise have had authority to act upon,” but on the other hand, citing La. C.Cr.P. art. 821 for the proposition that the motion could have been granted if the jury had delivered a guilty verdict. The majority emphasizes that the defendant would have been required to move for the acquittal under Article 821. However, the defense moved for the acquittal before the case proceeded to the jury based on a dearth of evidence on an essential element. I am unwilling to assume that being wholly competent to recognize the dearth of evidence before the case went to the jury, the defense would have forgotten about the dearth of evidence after a guilty verdict from the jury or otherwise would have failed to move for an acquittal after a guilty verdict from the jury.

. Although La.C.Cr.P. art. 778 (entitled “Motion for acquittal”) does not expressly prohibit a trial court from entering an acquittal in a jury trial before the jury has rendered a verdict, the text of Article 778 begins with the phrase: "In a trial by the judge alone” and later describes granting "a judgment of acquittal ... after the close of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.” By clear implication, Article 778 does not apply to a jury trial.

. In legal parlance, what is known as the “contemporary objection rule” is contained in La.C.Cr.P. art. 841 and requires an objecting “party, at the time the ruling or order of the court is made or sought, [to] make[] known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.” La. C.Cr.P. art. 841(A).

. Even before our nation achieved independence, prohibitions against double jeopardy existed in the New World. For example, in the year 1641, the General Court of the Massachusetts Bay Colony enacted the Body of Liberties which, in pertinent part, provided that: "[n]o man shall be twise sentenced by Civill Justice for one and the same Crime, offence, or Trespasse.” A Brief History of the Fifth Amendment Guarantee Against Double Jeopardy, 14 Wm. & Maiy Bill Rts. J. 193, 222 (Oct.2005).

. By using the term "directed verdict,” the majority suggests the jury was instructed to acquit before close of trial. See Davenport, 13-1859 at 21, 147 So.3d at 150-51, citing La.C.Cr.P. art. 821. This did not occur. Instead, the trial judge himself evaluated the *160 state’s evidence and freed the defendant before dismissing the jury.